Sturges *v.* Spofford.

[NEW YORK GENERAL TERM, November 2, 1868. *Ingraham, Mullin,* and *Peckham,* Justices.

---

STURGES and others, as Commissioners of Pilots, *vs.* SPOFFORD.

The mode designated by the act of the legislature " to provide for the licensing and government of the pilots, and regulating pilotage of the port of New York," passed June 28, 1853, for the selection of Commissioners of Pilots, viz. that three of them shall be " elected " by the chamber of commerce, and two of them by the presidents and vice presidents of certain marine insurance companies, (*Laws of* 1853, *p.* 921, §§ 2, 3,) is not an *election* within the meaning of article 10, section 2, of the constitution, requiring all officers whose election or appointment is not therein provided for, or whose offices may be thereafter created by law, to be elected by the people, or appointed ; but is an appointment.

The act, therefore, so far as that provision is concerned, is not unconstitutional.

By section 2 of the act of April 3, 1857, " to amend the pilots laws," declaring that the provisions of said act should not apply to vessels propelled wholly or in part by steam * * * *licensed* and engaged in the coasting trade, (*Laws of* 1857, *ch.* 243,) it was the intention of the legislature to confine the exemption to those vessels which have taken out a coasting license as provided by the act of congress, by which their business would. be confined exclusively to the coasting trade, and it would then be known at the time of sailing that such was their character.

Although a registered vessel possesses all the powers of a coaster without a coasting license, so far as the carrying of passengers is referred to, yet a register is not a *license.*

THIS action was brought by the plaintiffs as Commissioners of Pilots, to recover penalties for violation of the provisions of section 29 of the act " to provide for the licensing and government of the pilots, and regulating pilotage of the port of New York," passed June 28, 1853, as amended by chapter 243, laws of 1857, in employing a person not holding a license from the plaintiffs, or under the laws of New Jersey, to act as pilot.

The section contains the following provisions:

§ 29. * * * " Any person not holding a license as pilot under this act, or under the laws of the state of New Jersey, who shall pilot, or offer to pilot any ship or vessel to or from the port of New York, by the way of Sandy Hook, except such as are exempted by virtue of this act, or any master or person on board a steamtug or towboat, who shall tow such vessel or vessels, without such licensed pilot on board such vessel or vessels, shall be deemed guilty of a misdemeanor, and on conviction shall be punished by a fine not exceeding one hundred dollars, or imprisonment not exceeding sixty days; and all persons employing a person to act as pilot, not holding a license under this act, or under the laws of the state of New Jersey, shall forfeit and pay to the board of Commissioners of Pilots the sum of one hundred dollars."

The complaint alleged the employment, by Messrs. Spofford, Tileston & Co. of whom the defendant is survivor, of John Maginn, a person not holding a license as pilot under the above pilotage act of New York or under the laws of the state of New Jersey, to pilot to sea from the port of New York, by the way of Sandy Hook, certain steamships and sailing vessels mentioned in the complaint in ninety-six separate counts or causes of actions, being in all ninety-six vessels, and demanded judgment for the penalty of $100 prescribed by the act for each separate violation, being $9600.

The answer put in issue the several allegations of the

complaint, and averred that all the vessels mentioned therein were, at the times of the alleged employment of Maginn as a pilot thereon, propelled by steam, and that at each of such times Maginn had a license as pilot, which authorized him to act as pilot on each of said vessels; also that as to the *Columbia* and *Marion* and *Star of the South*, three steamers specified in the complaint, the same were under charter to the United States government; also that said three last named vessels were licensed and engaged in the coasting trade. The answer also set up the statute of limitations in respect to the causes of action, numbered 1 to 76. On the trial, before Justice Davis, it appeared that the defendant was the owner of all the vessels named in the complaint, with the exception of the *Trade Wind* and the *Star of the South* that John Maginn piloted to sea, by the way of Sandy Hook, forty-six of the several vessels named in the complaint, being all the vessels, except those specified in the several counts of the complaint. Of the forty-six vessels thus piloted by John Maginn, seven were sailing vessels, all the others were steamers carrying passengers. John Maginn held a license under the state pilotage act of 1853, which expired September 6, 1860. Since that time he has not held a license as pilot under said act nor under the laws of the state of New Jersey. At the times mentioned in the complaint he held a license as pilot of steamers, issued to him under the act of congress of August 30, 1852, entitled "An act to amend an act entitled an act to provide for the better security of the lives of passengers on board of vessels propelled wholly or in part by steam." It also appeared that in the year 1836 Maginn had been licensed under the then existing law as a branch pilot, but no copy of the license appears in the case. All the vessels mentioned in the complaint were vessels sailing under register and not under enrollment. The charter-party, under which the *Marion* was employed by the United States government

(the only vessel proved to have been so employed) excepted pilotage at New York as not to be paid by the government. John Maginn was employed as pilot as above by Spofford & Tileston, who claimed and insisted that he was entitled, as a pilot under the act of congress, to pilot vessels by the way of Sandy Hook, and took issue with the Board of Commissioners of Pilots on that subject. Their cashier paid Maginn for his pilotage services. In every case where Maginn piloted a sailing vessel to sea, the steamtug towing the sailing vessel had no pilot holding a license under the state law, and all the movements of the vessel were under the control of Maginn as the responsible pilot.

The court found, as matter of fact, the employment by the defendant of Maginn, to act as pilot, in piloting to sea from the port of New York, by the way of Sandy Hook, the several vessels specified in the causes of action stated in the complaint, and numbered respectively, 2, 3, 7, 10, 11, 16, 17, 21, 24, 32, 41, 45, 47, 48, 51, 56, 57, 59, 64, 68, 70, 71, 79, 87 and 89, each of said vessels being a sailing vessel, not propelled wholly or in part by steam; and the like employment in respect to the registered steamers specified in the causes of action numbered respectively, 9, 19, 22, 23, 25, 27, 28, 31, 35, 46, 49, 50, 53, 54, 55, 58, 63, 67, 75, 85, 93 and 94; also that neither of said vessels was licensed and engaged in the coasting trade or otherwise, except from the provisions of the pilotage act of June 28, 1853, as amended; that John Maginn did not, at any of the times in the complaint specified, hold a license as pilot under said pilotage act, or under the laws of the state of New Jersey.

As conclusions of law, the court held and found that said John Maginn was not entitled to act as a pilot by the way of Sandy Hook, under or by virtue of the license held by him under the act of congress of August 13th, 1852, or the state license of September 16th, 1836; and

that the employment of said Maginn by the defendant to pilot the several vessels above named, was in respect to each several employment, a violation of section 29, of the state pilotage act, and that the plaintiffs were entitled to recover the sum of $4600, the aggregate of the several penalties proved to have been incurred.

The defendant excepted to the above findings.

Judgment being entered for $4732, the amount of penalties and costs, the defendant appealed to the general term.

*Erastus Cooke,* for the appellant. I. John Maginn held a license, duly made by the governor of the state of New York on the 16th of September, 1836, as branch pilot for the port of New York, by the way of Sandy Hook, to run for and during the whole term, limited by the constitution. He testified that he has had such license, and acted under it ever since 1828. This covers the date of March 10, 1845. The act of April 1, 1845, provides that, "all persons holding licenses as such pilots, on the 10th day of March, 1845, shall be, and continue to be pilots by the way of Sandy Hook." (*Laws of* 1845, *p.* 30.) This provision is not inconsistent with the act of 1853, and consequently is not repealed by it. (*Laws of* 1853, *p.* 928, § 31. *Mitchell* v. *Halsey*, 15 *Wend.* 242, 243.) In 9 *Cowen*, 506, the court say: "Repeals by implication are things disfavored by the law, and never allowed of but when inconsistency and repugnancy are plain and unavoidable." It follows that Maginn continues to be a pilot for the port of New York, by way of Sandy Hook.

II. The statute of 1845, and that of 1853, are *in pari materia,* and are to be construed as if they formed parts of the same statute, and were enacted at the same time. (*McCartee* v. *Orphan Asylum Society*, 9 *Cowen*, 437.) The head note contains the true rule: "Two statutes shall stand together, and both have effect if possible; for the

law does not favor repeals by implication, and all acts *in pari materia* should be taken together as if they were one law." In the *Watertown and Whitehall Turnpike* v. *The People*, (9 *Barb.* 169,) it was held that the act of 1787, and the Revised Statutes, so far as they relate to challenges to jurors were *in pari materia*, and must be construed as if they formed parts of the same statute, and were enacted at the same time. And Judge Willard, on the same page, says: "Statutes are *in pari materia* which relate to the same *person or thing*, or to the same *class* of *persons* or *things.*" (1 *Kent's Com.* 463. 7 *Conn. Rep.* 463, 464, 469.) Chancellor Kent says: "This rule applies, though some of the statutes may have expired, or are not referred to in the other act." (1 *Kent's Com.* 463, 464. *Rexford* v. *Knight*, 15 *Barb.* 627, 642.) Applying these principles to the case, and construing the acts as one, John Maginn, who is a pilot by *one of the provisions* of the act, is a pilot *under the act*, within the meaning of the 29th section.

III. Maginn was a pilot *de facto*, acting under color of legal authority, and his acts, as regards third persons, are valid. (*People* v. *Tieman*, 8 *Abb.* 361, *Per Allen, J.*) The defendant knew he was acting as pilot. He was not bound to know, nor did he know, that he had no license, and he, therefore, cannot be subjected to the penalty. Again: 1. Maginn claimed that the plaintiffs had not the power by any act of pretended suspension to take away his functions as pilot, and he continued to act, and is *de facto* a pilot. This action assumes that he had no title to the office—a question that cannot be tried in this collateral way. He should first be actually ousted and prevented from acting. But until that be done, the resolution of suspension is of no effect as regards third persons. (13 *Wend.* 494. 8 *Abb.* 362. *People* v. *Tieman, supra. People* v. *Collins*, 7 *John.* 549.) 2. The commissioners claim to have suspended Maginn in 1860, but appointed or licensed no one in his place. In such case his suspension should be

held as not to take effect until his successor was appointed and qualified. The port of New York is not to be left without a pilot, and for aught that appears in the case, Maginn was the only pilot who had at the time complained of ever being licensed by the board. (8 *Abb.* 363.)

IV. The plaintiffs are not entitled to recover penalties. for employing an unlicensed pilot, unless there were licensed pilots to be employed. The defendant, by the laws of congress, was bound to have a pilot, under severe penalties. Those laws are broad enough to cover the subject of port pilotage, and are to be pursued unless there is a system provided by the state authority in actual *operation.* This state system the acts of congress permit, but it devolves on the plaintiffs who seek these penalties to prove affimatively that such a system had not only been devised, but that it had been carried into effect by the licensing of pilots. In the absence of such proof, the federal regulation is in force.

V. Maginn had a license under the act of congress of 1852, applicable to all steamers carrying passengers. (10 *U. S. Statutes at Large,* 67.) .

VI. The Commissioners of Pilots claim to be public officers. Unless they are such, they have no functions to perform, and the action being brought by themselves, their title to the office is directly in issue. (*People* v. *Tieman,* 8 *Abb.* 362.) They are not legally elected or appointed to office. The office is created by the statute of 1853, which provides: § 2. That three of such commissioners shall be elected by the members of the chamber of commerce of the city of New York. § 3. That the other two commissioners shall be elected by the presidents and vice-presidents of· the marine insurance companies represented in the board of underwriters of the said city. The election is to be evidenced by the certificate of the secretaries of the respective boards. This mode of constituting officers is contrary to the terms as well as the spirit of the constitu-

tion. Article 10, section 2, of the constitution provides for the election or appointment of county, city, town, and village officers, and restricts the legislature respecting the elective constituency and the appointing power : 1. If elected—To the *electors of the county, city, town, or village* to which the office relates. 2. If appointed—To the board of supervisors of the county, or to such authorities of the cities, towns, or villages as the legislature shall designate. Other provision is made in the constitution for appointments to certain other offices by the governor. Then follows the latter clause of section 2. That all other officers whose election or appointment is not provided for by this constitution, or which may hereafter be created by law, shall be elected by the *people or appointed.* The pilot commissioners are neither : 1. Elected by the people, but by the members of two corporations in no way representing or responsible to the people ; or 2. Appointed by any recognized appointing power. The words elected and appointed are not to be construed as meaning the same thing, for each is sufficiently defined by the constitution. Each has its own process and method. The machinery provided by the law of 1853, for choosing these commissioners is not adapted to the process of appointment, but only to an election, which it expressly declares the process to be.

VII. The legislature have no authority to locate, establish, or delegate a power to appoint officers in or to any corporation or body not representing or responsible to the people. It is not only a departure from all the precedents, but it is contrary to the whole theory and spirit of our government. The board of Commissioners of Pilots, then, is a nonentity. The act creating it is void. Their action in suspending Maginn as pilot is a nullity, and Messrs. Sturges, Marshall, and others, have no right to recover the penalties.

---

---

*Wm. Allen Butler,* for the respondents.   I. It is *res judicata* that the pilotage act of this state, passed June 28, 1853, (amended April 11, 1854, and April 4, 1857,) is not in conflict with the Constitution of the United States, and also that the act of August 30, 1852, authorizing the licensing of pilots to be attached to sea-going steamers, does not supersede or affect the state pilotage act. · (*See Cooley* v. *Port Wardens of Philadelphia,* 12 *How. U. S.* 209; *Steamship Co.* v. *Joliffe,* 2 *Wallace,* 450, 461, 462; *and Cisco* v. *Roberts,* 36 *N. Y. Rep.* 292.)   In the last cited case, decided in Court of Appeals since the appeal in the present case was taken, the claim of John Maginn to act as port pilot on steamers by the way of Sandy Hook under his license granted pursuant to the act of congress of August 30, 1852, was set up, and the decision was adverse to such claim. The defense founded on the license under the act of congress of August 30, 1852, which was the main defense relied on at the trial of this action, therefore wholly fails, and there was no error in the ruling of the learned judge, at the trial, that Maginn was not entitled or qualified to act as a pilot from the port of New York by the way of Sandy Hook, by virtue of that license.

II. The license granted to Maginn in 1836, expired with the repeal of the pilotage system then in force.   The branch pilotage system of this state in force in 1836, was repealed in 1837.   (*See Laws of* 1837, *p.* 168; *also Id.* 1838, *p.* 168; *Id.* 1853, *p.* 921.)   Maginn acquiesced, and took out a new license under the act of 1853.   But the only exception which relates to the finding as to this license of 1836, is that numbered 5, which is to the whole of the conclusion of law 1, and if any part of that conclusion is correct, the exception fails.

III. The claim that the sailing vessels in tow of tugs were propelled by steam is irrelevant, since under the above decisions of the Court of Appeals, there is 'no

Sturges *v.* Spofford.

distinction between sailing vessels and steamers in respect to the application of the state law.

IV. The claim that Maginn continued to be a pilot under the state law, after his license expired, is untenable. There is no "holding over" by a mere license after the term for which his license was granted has expired. The Board of Commissioners of Pilots are authorized to license for such period as they deem proper, and under this power they grant licenses from year to year; the persons licensed cannot derive a right under the license which the power granting the license did not originally confer.

V. Neither of the penalties is barred by the statute of limitations. The cause of action is embraced in section 93, subdivision 2, of the Code.

VI. The act of congress of April, 1866, does not affect the cause of action or right of recovery here. It at most only withdraws the operation of the state law for the future from the vessels enumerated, and is prospective; nor could it affect the causes of action in this suit. (*Palmer* v. *Conley*, 4 *Denio*, 374. *S. C.* 2 *N. Y. Rep.* 185. *And see Cisco* v. *Roberts*, 36 *id.* 292.)

VII. The penalty given relates to any ship or vessel; and the penalty though single as to all persons uniting in an employment for any one vessel, is clearly intended to be several as to each separate employment; otherwise the whole intent of the act would be defeated.

*By the Court*, INGRAHAM, J. There are no questions raised in this case, requiring any particular examination, excepting the one that relates to the constitutionality of the law, and that which claims the benefit of the exception in favor of vessels licensed and engaged in the coasting trade.

As to the validity of the law, I do not think we are to consider the mode designated for the selection of these officers an election, within the meaning of the constitu-

tion.　Officers are to be elected by the people or appointed by local authorities.　The mode in which that appointment is carried out may be by ballot of the parties author-ized to make the appointment, or by resolution naming the officer and voted for by those having the appointing power.　It recognizes but two modes of getting officers—one by election of the people, and the other. by appoint-ment in some other way.　The expression used in the law "elected by," &c. does not bring it within the first class or that of elective officers, and it must be included under the other designation.

I have more difficulty in regard to the provision exempt-ing steam going vessels, licensed and engaged in the coasting trade, from the obligations imposed by this statute.

It is clear that a registered vessel possesses all the powers of a coaster, without a coasting license, so far as the carry-ing of passengers is referred to.　If the term "licensed" had been omitted, there would be no doubt as to their exemption.　But the legislature have added another requi-site, namely, that such vessels shall have a license.　Now a register is not a license.　I am inclined to the opinion that the only interpretation to be given to this term is the intent to confine the exemption to those vessels which have taken out a coasting license as provided by the act of congress, by which their business would be confined exclusively to the coasting trade, and it would then be known at sailing that such was their character.

If this construction is correct, there is no ground for interfering with the judgment.

Judgment affirmed.

[NEW YORK GENERAL TERM, November 2, 1868.　*Ingraham, J. F. Barnard* and *Mullin,* Justices.]