The State, *ex rel.* Morris, *v.* McFarland.

THE STATE, EX REL. MORRIS, *v.* McFARLAND.

[No. 18,419.   Filed January 11, 1898.]

OFFICERS.—*County Superintendent.—Appointment.—Power of County Auditor to Give the Casting Vote.—Statute Construed.*—Under section 5900, Burns' R. S. 1894 (4424, R. S. 1881), providing for the appointment of county superintendent, the county auditor is authorized to give the casting vote in case of a tie, whether such appointment is made by ballot, *viva voce* vote, or by the adoption of a motion or resolution declaring that the person therein named be appointed to fill the office.  *State* v. *Edwards,* 114 Ind. 581, overruled.

From the Martin Circuit Court.   *Affirmed.*

*H. Q. Houghton, J. B. Marshall* and *H. McCormick,* for appellant.

*F. Gwin, Rogers & Rogers* and *Ogden & Inman,* for appellee.

JORDAN, J.—This proceeding was instituted, upon information filed in the lower court in the name of the State, on the relation of the appellant, John T. Morris, whereby he sought to eject the appellee, Elijah McFarland, from the office of county superintendent of the county of Martin, and gain admission himself to that office.   On the issues joined there was a trial, and special finding of facts by the court, and conclusions of law stated thereon to the effect that the appellee was legally elected and entitled to the office in dispute, and that the relator take nothing by the action, and judgment was rendered accordingly.

The only material question presented for decision is as to whether the auditor of Martin county, under the facts, was authorized by law to give the casting vote which he did in the proceedings by the township trustees relative to the appointment of a superintendent.   A summary of the material facts, as dis-

closed by the finding, is as follows: There are ten township trustees of Martin county, Indiana, and all of these trustees assembled at the office of the county auditor of that county on the first Monday in June, 1897, in compliance with the statute, for the purpose of appointing a county superintendent to succeed the relator, who was then the incumbent of that office, and had held the same for four years prior to said day. The trustees organized by electing one of their number chairman (the auditor acting as clerk, as provided by the statute), and then proceeded to ballot for superintendent, taking thirty-eight ballots, and no one person receiving a majority of all the votes cast, as the result of any one of the ballots taken, the votes cast being distributed among several persons. At the close of the thirty-eighth ballot, no appointment having been made, on motion it was ordered that the meeting adjourn to convene again at 6:30 p. m. on the same day, at which hour the trustees all again convened, and proceeded to ballot until 11:50 p. m. without succeeding in securing the appointment of a superintendent, when, having taken 138 ballots in all on said day, they again adjourned to meet at 8 o'clock a. m. the next day, June 8th, 1897, at which time they assembled and proceeded with the unfinished business before them. After taking fourteen more ballots, making a total of 152, and no one, as the result of any of said ballots, having received a majority of all the votes cast, and no two persons having received an equal number of the votes cast on any of said ballots, a motion was then made and seconded that the method of voting be changed from voting by ballot to that of voting upon a motion to appoint; and on the adoption of this motion, as made, five of said trustees voted in favor of the motion and five against it, and thereupon, a tie having resulted, the auditor cast his vote in the

The State, *ex rel.* Morris, *v.* McFarland.

affirmative, and the motion was declared adopted. It was then moved and seconded that a resolution be adopted as follows: "Be it resolved by the trustees of Martin county, Indiana, that Elijah McFarland be appointed county superintendent of schools of said county for the ensuing two years." A motion was made to amend the resolution by striking out the name of McFarland and inserting that of John T. Morris. On the adoption of this motion, five of the trustees voted in favor thereof and five against, and the chairman announced a tie, and thereupon the auditor voted against the proposition to amend, and it was declared lost. A vote was then taken on the motion to adopt the resolution, which resulted in five of the trustees casting their votes in favor of the resolution and five against its adoption, and thereupon the chairman declared a tie, and the auditor then cast his vote in favor of the resolution, and the chairman declared it adopted, and that McFarland had been appointed county superintendent for the term of two years, and the meeting then, on motion, was declared to be adjourned. Other facts are found showing that McFarland, the appointee, and appellee herein, was eligible to be appointed to the office in controversy, and that he duly qualified under said appointment and entered upon the discharge of the duties of the office.

Section 5900, Burns' R. S. 1894 (4424, R. S. 1881), being the statute upon which the appointment of appellee to the office in question is based, omitting parts not essential to the question involved, reads as follows: "The township trustees of the several townships of each county shall meet at the office of the county auditor of such county on the first Monday of June, 1873, and biennially thereafter, and appoint a county superintendent. * * * Whenever a vacancy shall occur in the office of county superintendent, by

death, resignation or removal, the said trustees, on the notice of the county auditor, shall assemble at the office of such auditor, and fill such vacancy; * * * * and the county auditor shall be the clerk of such elections in all cases, *and give the casting vote in case of a tie,* and shall keep the record of such elections in a book to be kept for that purpose." (Our italics.) It is claimed by counsel for the relator that, upon a proper interpretation of this statute, under the facts, that the appellee, McFarland, was not legally appointed to the office in dispute, for the reason that he did not receive a majority of the votes cast by the ten trustees present and voting at the time the appointment is said to have been made. Their specific contention is that, in view of the fact that the resolution which named the appellee as the person to be voted for received the votes of but five of the trustees, while those of the remaining five were cast against it, this action of the trustees did not operate to create a tie, within the meaning of the statute, and therefore the auditor was not authorized to vote either for or against the adoption of the resolution. It is insisted that, under the provisions of the statute, it is only where the votes of the trustees have been cast for two persons, each of whom receives an equal number of such votes, that a tie can result, which would warrant the auditor to give the casting vote. It is further urged that the auditor had no right, as he did, to vote, under the circumstances, and thereby change the mode of making a choice by ballot to that of making the appointment by means of a resolution. The law, as we have seen, lodges the authority of appointing a county superintendent in the township trustees of the county. They, when assembled for that purpose, constitute the body invested with the power to discharge this important duty. The auditor, it appears, is made the clerk of the

election, and it is only in the event of an equal division of the trustees (a quorum being present) that the auditor is invested with power to cast his vote for or against the particular proposition involved. The law does not, in terms, prescribe any precise method, manner, or form, by which the trustees shall choose a superintendent, and therefore the form or means by which the appointment may be made is not material. The choice of such officer by the body empowered to make the selection, may be ascertained by ballot, or a *viva voce* vote, or by the adoption of a motion or resolution declaring that the person therein named be appointed to fill the office. See *Sturges* v. *Spofford*, 52 Barb. 436, on page 446; *State* v. *Kilroy*, 86 Ind. 118; *State* v. *Dillon*, 125 Ind. 65.

It is conceded by counsel for the appellant that had the resolution under which appellee claims to have been appointed received a majority of the votes cast by the trustees, it would have been adopted, and he would have been thereby legally elected. It being permissible, then, for a majority of the trustees to designate their choice of a person by either the adoption of a motion or resolution to that effect, upon what tenable grounds can it be asserted that, when an equal division of the trustees, present and voting, results upon the adoption of such motion or resolution, it does not constitute a tie vote within the meaning of the statute? That it would be such under parliamentary law or usage is evident. We must confess that we can perceive no sufficient reason for upholding the right of the auditor to give the casting vote, when the tie results from a vote taken by means of a ballot, and denying his right to do so when the trustees are equally divided upon a *viva voce* vote, taken on making the appointment by means of a motion or resolution. From the number of ballots taken in the case at bar,

it must have been evident to all that further efforts to appoint a superintendent by means of a ballot vote would be of no avail; and, as the statute commanded that the appointment should be made, it certainly was apparent that, under the existing circumstances, the purpose and object of the law could be more easily and conveniently carried out by the adoption of a resolution naming the person to be chosen. In the case of *State* v. *Dillon, supra,* all of the trustees, being eight in number, met at the time and place fixed by the law, and, after an organization had been secured, the name of Dillon was presented by a motion to be voted for to fill the office of county superintendent. Four of the trustees voted in favor of the motion, and the other four refused to vote either for or against it. The county auditor, under the circumstances, cast his vote in favor of the motion. While it is true that, in the case mentioned, the vote of the auditor was not considered as a controlling factor, as it was held that Dillon had been legally elected, for the reason that he had received a majority of the votes of a quorum present and voting. The view of the court, however, expressed through Olds, J., speaking as its organ, relative to the question as now involved, was as follows: "In this case the elective body was in session, it consisted of eight members, and it was properly moved that Dillon be elected county superintendent, and four of the eight voted for his election, the other four declining to vote. *If the other four had voted against his election, the law in that case provided that the county auditor should give the casting vote.* [Our italics.] It was the duty of all the members of the board to vote for or against the candidate whose name was proposed, and they could not defeat the object of the meeting and avoid the law, and prevent an election by remaining silent and refusing to vote either for or

against the candidate proposed." The mayor of a city, in this State, by the charter law relative to the incorporation of cities, is made the presiding officer at the meetings of the common council, and in the case of a tie on the part of the members of the council he has the casting vote. It is the frequent practice where the council is empowered to appoint city officials, to designate the person appointed by the adoption of a resolution, and in the case of an equal division of the council on a vote taken on such a resolution, the right of the mayor to give the casting vote, to our knowledge, has never been called in question, although such power under such circumstances has been frequently exercised.

In *Launtz* v. *People*, 113 Ill. 137, the charter of the city of East St. Louis authorized the mayor to give the casting vote in case of a tie in the common council. On the adoption of a motion to approve the bond of the city treasurer, four of the eight members of the council voted in the affirmative, the other four refusing to vote, either in the affirmative or negative. It was said by the court in that case, that the mayor might treat those who refused to vote as being opposed to the motion, and the result would be equivalent to a tie, and would, therefore, warrant him in voting as in case of a tie. In the appeal of *Carroll* v. *Wall*, 35 Kan. 36, 10 Pac. 1, it was held that where the mayor, under the law, had the casting vote when the council was equally divided, he had the power, where a tie resulted on a motion to confirm the appointment of a city attorney, to give the casting vote. These decisions will, at least, serve to illustrate that a tie vote of an assembly, in which event a certain person designated by law is entitled to vote, may, and does arise, whether the proposition or matter before the body is attempted to be carried out by the means of a ballot, or by a *viva voce* vote on a motion or resolution.

The very purpose for which the law requires the township trustees to assemble on the day and at the place fixed is to appoint a superintendent, and under no circumstances does the statute contemplate that this purpose or object shall be defeated by any "maneuvering" or "jockeying" upon the part of those charged with the duty of making such appointment. Should we hold the grounds upon which counsel for appellant found their contention to be tenable, then, under similar circumstances, the contest for the appointment of a superintendent might be indefinitely prolonged, and an election of any one prevented. No construction should be placed upon the statute which might lead to such a result. The legislature, in empowering the auditor to vote in case of a tie, no doubt considered the fact that the trustees might be equally divided, not only on the question as to the individual to be chosen to fill the office, but also on propositions preliminary to making the appointment, and, in case of a tie on any such preliminary question, the auditor must be held to have the right to give the casting vote for or against such proposition. It cannot be said that the appellee herein, under the facts, did not receive a majority of all the votes cast by the electoral body upon the occasion in question; for, as the auditor is empowered to vote in case of a tie, consequently, upon the happening of that event, at least, for the purpose of giving the casting vote, that officer must be deemed and considered to that extent as one of the electoral body, and to his vote the law accords the same force and effect as to that of any one of the trustees, and when cast in the affirmative, as it was in this case, it serves as the crowning act in the election.

We are constrained to hold that the auditor in each instance herein mentioned was entitled to vote, and

therefore the resolution was legally adopted and the appointment of the appellee to the office in dispute is in all respects valid. He was not only, under the circumstances, permitted to vote, but the law expressly required him to discharge that duty.

We are aware that the doctrine affirmed in the case of *State* v. *Edwards*, 114 Ind. 581, sustains the contention of appellant's learned counsel, and therefore that case is in direct conflict in this respect with the conclusion reached in this appeal. It may be said, however, that the construction placed upon the statute relative to the right of the auditor to vote in that decision is narrow and apparently strained, and is unquestionably contrary to the very spirit or object of the law, and so far as the holding therein conflicts with that in this case, it must be considered and held to be overruled. Some of the earlier decisions of this court, in construing the statute in question, were inclined to be too strict, while the later ones are more liberal, and, as we believe, more in harmony with the spirit or intent of the law. See *Wampler* v. *State*, 148 Ind. 557.

The judgment below, under the facts and the law applicable thereto, is a correct result, and is therefore affirmed.