THE PEOPLE *ex rel.* Joshua Gaskill *vs.* WASHINGTON RANSOM.

A verdict can be taken subject to the opinion of the court, only for the reason that the case tried presents questions of law, and nothing else.

Consequently, in such a case, there can be no disputed questions of fact; and if there were, they could not be decided by the court. It is therefore improper to set out in the case the evidence given upon the trial.

The powers of a city corporation, in respect to the appointment of charter officers, are statutory powers, simply, and the officers on whom they are conferred take nothing whatever beyond the powers which the charter actually and affirmatively gives them.

Hence when a city charter provides that the mayor shall have a casting vote, when the other members of the common council are tied, without either expressly or by clear implication conferring upon him the power to vote on any other occasion, or under any other circumstances, that power is as effectually withheld from him as it would have been by an explicit prohibition on the subject. By providing that he shall have a casting vote, it is implied that he shall have no other vote.

Thus, where the charter of the city of Lockport provided that "in the proceedings of the common council each alderman shall have one vote, and the mayor shall have a casting vote when the votes of the other members are tied;" it was *held* that the mayor had no right to vote with the aldermen upon the appointment of a city clerk.

THIS was an action in the nature of a quo warranto, brought for the purpose of determining the relator's right to the office of city clerk of the city of Lockport. An issue of fact was joined in it, which was tried at the

circuit held in Niagara county, and a verdict was directed for the plaintiff, subject to the opinion of this court at general term. The relator was city clerk on the 15th day of April, 1867, and was then entitled to continue in the office until his successor was appointed. On that day the mayor of the city, at a meeting of the common council, regularly held, nominated the defendant for appointment to the office of city clerk. Four of the aldermen and the mayor voted in favor of his appointment, three of the aldermen voted against it, and one of the aldermen of the city was absent, and consequently did not vote upon the question. The defendant afterwards qualified himself for the office, as required by the charter, and subsequently obtained possession of the office, including the books and papers belonging to it, and has since continued to hold it.

*Richard Crowley*, for the plaintiff.

*Murray & Green*, for the defendant.

*By the Court*, DANIELS, J. Before considering the legal question argued by the counsel in this cause, it will be necessary to say a word in reference to the manner in which the point has been brought before this court for its decision. The verdict could only be taken in the manner it was, for the reason that the case tried presented questions of law, and nothing else. In such a case there can, therefore, be no disputed questions of fact. If there were, they could not be decided by the court; for the decision of such questions is solely within the province of the jury. The facts being all beyond dispute, and the law alone being involved in the controversy, they, and not the evidence of them, should have been presented by the case made in the cause. Instead of the case being made in that manner, which is the only way it could properly have been made, where no dispute exists about the facts, not

a fact is stated in it; but the evidence given upon the trial is set out *in extenso.* This practice is entirely improper; and unless it be discontinued this court will be required, in order to secure the correction of it, to send the cases back for resettlement, at the expense of the parties in whose behalf they may be prepared.

The only legal question arising in this cause is, whether the mayor was authorized by the charter of the city of Lockport to vote as a member of the common council, in favor of the defendant's appointment. And that question is to be determined by the construction which should be given to so much of chapter 365 of the laws of 1865, and 542 of the laws of 1866 as bears upon the subject. It is unnecessary, therefore, to examine it in the light of parliamentary precedents and law, as was very ably done by the learned counsel for the plaintiff, upon the argument of the case. If the act referred to conferred the power upon the mayor to vote for the defendant's appointment, then it was lawfully and properly made, and he is entitled to retain the office and enjoy its emoluments. If that act conferred no such authority, then it is equally as clear that the appointment was not lawfully made, and the relator will, in that case, be still entitled to hold the office. For by the charter he was authorized to continue in the office until his successor should be appointed.

The city of Lockport is divided into four wards, each of them having two aldermen; and they, together with the mayor, it is declared, constitute the common council. (*Laws of* 1865, *p.* 656, *tit.* 3, § 1.) But while the mayor is thus made a component part of the common council, he is only so as its presiding officer, and the executive officer of the city. No active duty is imposed upon him in that capacity, beyond the power of voting when the aldermen are tied. In all other respects he is distinguished, by the charter, from the common council; for the duties assigned to each are of a distinct and separate nature. If the office

of mayor for any cause may become vacant, the charter requires the common council to appoint a special election for the purpose of supplying it; where watchmen and special policemen are to be appointed, that is required to be done by the mayor *and* common council. The other city officers who, under the provisions of the charter, are not required to be elected, are to be appointed by the common council, upon the nomination of the mayor. If the council fail to concur in the mayor's nomination, then the appointment is to be made upon the nomination of a member of the common council, not the nomination of some *other* member of the council, as it would have been if for this purpose the mayor had been intended to be a member, but simply on the nomination of a member of the council, as distinguished from the mayor. It is also made the duty of the mayor to communicate to the common council a general statement of the affairs of the city, and to exercise a supervision over the conduct of subordinate officers; to examine into complaints against them, and to report the facts to the common council. (*Laws of* 1865, *p.* 651, § 14; 652, § 17. *Laws of* 1866, *p.* 1159, § 17. *Laws of* 1865, *p.* 646, § 1. *Laws of* 1866, *p.* 1155, § 1. *Laws of* 1865, *tit.* 4, § 1.)

These various provisions indicate it to have been the intention of the legislature that the mayor, although as its presiding officer an integral part of the common council, should, for all other practical purposes, be distinguished from it. Beyond his relations to the council as its president, and the executive head of the city, their functions are of a separate and independent character. He is to communicate and report to the common council. If his office becomes vacant, the vacancy is to be filled by the action of the common council. If appointments are to be made, he is to nominate, and the common council to appoint. And if that body fail to concur in his nomination, even that power may be exercised by a member of the

common council, as distinguished from himself. Under this clear distribution of their powers, it could hardly be supposed that the legislature intended he should exercise the power of voting also.

The requirement that local improvements shall only be ordered upon the affirmative vote of five aldermen, in no manner impairs the propriety of this conclusion; for that does not in any respect attempt to declare or prescribe of what officers the common council shall consist. This provision was probably intended to impose a restraint on the action of a mere quorum; for as that may be formed by a mere majority of the members of the council, local improvements could have been ordered by a bare majority of the quorum, if it had not been for the restraint imposed by this prohibition. Another restriction placed upon the action of a mere quorum, is that which prohibits the imposition of a tax or assessment, or the appointment to an office, to be made without the concurring vote of a majority of all the members of the common council in office. (*Laws of* 1865, § 4.)

This provision is more directly connected with the consideration of the subject involved in the present controversy than either of those which have been previously considered, unless it be that providing for the making of nominations; for it immediately affects the manner in which official appointments are to be made. That can only be done by the concurring vote of a majority of all the members of the common council in office. Is the mayor a member of the council for this purpose? Very manifestly he is not; for his duty regarding appointments is distinctly defined and declared. It consists in making the nomination to the council of the person who, in his judgment, should fill the office for which the appointment is to be made. When the appointment itself is made, that must be done by the common council; and there is but one way designated or prescribed for making it, and that is by the

The People *v.* Ransom.

concurring vote of a majority of all the members of the common council. And the power to vote is conferred solely and exclusively upon the aldermen, each of whom is to have one vote, except in the single instance when they are tied, and then only has the mayor a vote, and that is declared to be simply a casting vote. (*Laws of* 1865, *p.* 646, § 1; *p.* 657, §§ 2, 4.)

It must be remembered that these are statutory powers, simply, and the officers on whom they are conferred take nothing whatever beyond the powers which the statute actually and affirmatively gives them. When, therefore, the statute provides, as it does, that the mayor shall have a casting vote when the other members of the council are tied, without either expressly or by clear implication conferring the power upon him to vote on any other occasion, or under any other circumstances, that power is as effectually withheld from him as it would have been by an explicit prohibition on the subject. By providing that he shall have a casting vote, it is implied that he shall have no other vote. For if any different intention had existed on that subject, it is only reasonable to suppose that it would have either been expressed or clearly implied, in some other portion of the charter. Nothing of that kind has been either done or attempted. The entire power of voting is that which is given by the section already referred to, and that provides that "in the proceedings of the common council each alderman shall have one vote, and the mayor shall have a casting vote when the votes of the other members are tied." (*Laws of* 1865, *p.* 657, § 2.)

The same rule of construction should be applied to this case that has so often been applied to inferior courts and tribunals acting under statutory authority; and that is, that nothing can be taken by mere implication; but that the authority relied upon must be shown to have been actually given; otherwise the presumption is to be adopted that it does not exist. (*Jones* v. *Reed,* 1 *John. Cas.* 20. *Bloom* v.

*Burdick*, 1 *Hill*, 130.)   Under that rule, as well as under the fair import of the statutes themselves, constituting the charter of the city of Lockport, the power of voting in the proceedings of the common council has beeen conferred upon, and is to be exercised alone by, the aldermen, except in the single case of a tie, when a casting vote is provided for the mayor.   And as that power has been thus given, and confined to the aldermen, it must have been intended that the concurring vote of the majority of the common council, by which the appointments to office are to be made, was to be that of a majority of all the aldermen, as distinguished from the mayor.

This conclusion is confirmed, if any confirmation of it be necessary, by the peculiar language of the sections of the laws of 1865 and 1866, providing for the manner of making such appointments; for upon this subject those sections clearly distinguish between the action of the mayor and that of the common council.   He is authorized to nominate, but no authority is given him to do anything whatever beyond that.   And if the common council do not concur in his nomination, any member of the common council, not any *other* member, as it undoubtedly would have been if the mayor was to be deemed a member in concurring in the nomination made by him, is authorized to nominate for such office.   (*Laws of* 1865, *p.* 646, § 1; *of* 1866, *p.* 1155, § 1.)   This peculiar phraseology, taken in consideration with that of sections 2 and 4, page 657 of the laws of 1866, very clearly indicates the legislative purpose to have been to limit and confine the voting upon the nominations made, to the common council, as distinguished from the mayor.   Certainly so, unless in the single case of a tie, when, perhaps, under the unqualified language giving him a vote in that emergency, he would be at liberty to make use of it even for the purpose of making an official appointment.   As that emergency did not arise in

this case, it is not necessary at this time either to consider or decide that question.

From the views already taken of the charter, it follows that the defendant was not regularly appointed to the office of city clerk of the city of Lockport, and judgment should therefore be awarded, upon the verdict, in favor of the plaintiff.

Judgment accordingly.

[ERIE GENERAL TERM, February 8, 1869. *Marvin*, *Barker*, *Lamont* and *Daniels*, Justices.]