# SUPREME COURT.

## THE PEOPLE on the relation of ISAAC HIRSCH agt. JAMES McCAUSLAND.

*Quo warranto to try right to public office — power to go beyond canvass —
proof — evidence — power of removal.*

Upon an information in the nature of a *quo warranto* to try the right to
an office, it is competent to look beyond the canvass for the purpose of
giving effect to the action of the board making the appointment.

Where, in accordance with the provisions of the charter of the city of
Kingston, at a meeting of the common council, they proceeded to
appoint an alms-house commissioner, and according to the minutes
thereof as kept by the city clerk the relator received *ten votes* for the
office and the defendant *seven votes* and thereupon the relator was
declared duly appointed to such office :

*Held*, that the entry upon the minutes of the common council that the
relator had received *ten votes* for such office and was duly elected was
not conclusive, but that, on the trial of an information in the nature of
a *quo warranto*, it is competent for the defendant to prove the number
of votes the relator received, and whether the entry upon the minutes
that he then received *ten* was correct.

Where the charter provided that the mayor and aldermen should consti-
tute the common council and that no appointment to office could be
made except by a concurring vote of a majority of all the members of
the council in office:

*Held*, that the vote of the mayor has the same effect as that of any other
member of the body, and that the person must receive a majority of all
the votes of the members of the common council in office, counting the
mayor as one of such members, and not that the special vote of the
mayor for the successful candidate is necessary.

The subsequent action of the common council in approving the minutes
of the meeting at which the relator was declared duly appointed, and
its refusal to reconsider its supposed action expressed upon its minutes,
is not equivalent to an original appointment. Although subsequent
ratification of the acts of a party acting as the agent of another may be

equivalent to an original appointment, yet when applied to a case of a public office, the mode of filling which is declared by the law, the doctrine does not hold good.

The removal of the relator by the common council because they deemed the control and expenditure of the public moneys unsafe in his hands in consequence of his insolvency, and because they further considered from his own declarations, not that he was an irreligious man but one who, because he thought the sale of an intoxicating beverage on the Sabbath was proper and right in itself, would not properly discharge his duties by prosecuting therefor, was lawful and within the express powers conferred.

*Ulster Circuit, January*, 1877.

*Charles A. Fowler*, for plaintiff.

*S. L. Stebbins* and *A. Schoonmaker, Jr.*, for defendant.

WESTBROOK, *J.* — The proceeding in this matter is by *quo warranto* to remove the defendant, James McCausland, from the possession of the office of alms commissioner of the city of Kingston. Such removal is sought in order that its duties may be discharged by the relator, Isaac Hirsch, who claims title thereto.

By the charter of the city of Kingston (*chap.* 150 *of Laws of* 1872, *sec.* 59), a corporation called "by the name of The Commissioners of the Alms House of the city of Kingston" is created, and is "composed of the several alms commissioners of said city." The alms commissioners of the city are appointed (*sec.* 52) by the "common council thereof, and there is to be one for each ward," and they are to hold their offices (*sec.* 59) "for the full term of three years," and (*sec.* 16) "until their successors shall qualify." The common council is composed (*sec.* 25) of "the mayor and aldermen of the city," and it is expressly declared that they "shall constitute," the same. There are (*sec.* 2) nine wards in the city, and (*sec.* 3) two aldermen in each ward.

It was conceded upon the trial of this action that the

defendant, James McCausland, at a meeting of the common council, held May 30, 1873, was duly appointed alms commissioner for the seventh ward of said city; that he accepted such trust, and was discharging its duties thereunder at the time it is claimed that Isaac Hirsch, the relator, was appointed and qualified as hereinafter stated.

It was further conceded that, according to the minutes thereof, as kept by the city clerk, at a meeting of the common council, held April 21, 1876, two aldermen — Messrs. Bray and King — being absent, the relator, Isaac Hirsch, received ten votes for the office of alms commissioner, and the defendant, James McCausland, seven votes, and that thereupon Hirsch was declared duly appointed alms commissioner of said city of Kingston for the seventh ward thereof. At another meeting of the common council, held May 5, 1876, the minutes of the last preceding meeting, that of April 21, 1876, were read and approved. On the 24th day of April, 1876, the clerk of the common council notified Mr. Hirsch of his appointment, who qualified as alms commissioner on the twenty-sixth day of the same month. Under this alleged appointment the relator claims title to the office.

In answer to the case of the relator, the defendant claims, First, that at the meeting of April 21, 1876, Isaac Hirsch did not receive the vote of the mayor for the office, which the counsel for the defendant contend was necessary to make a valid appointment. Second, that the result of the vote as recorded in the minutes is erroneous, the relator, Hirsch, receiving only nine votes, and not ten, as therein stated, and that consequently, as he did not receive "a concurring vote of a majority of all the members of the common council in office," as required by section 28 of the charter, the said Hirsch was not appointed alms commissioner, as claimed by him. Third, conceding the fact to be that Hirsch was legally appointed to said office on the said twenty-first day of April, yet by section 16 of the charter, "the common council may remove any officer for

cause," and as Mr. Hirsch was so in fact removed on the 26th day of May, 1876, and Mr. McCausland was then appointed, the latter became the legal alms commissioner, and was entitled to hold the office.

Upon the trial of the action, at the Ulster, January, 1877, circuit, evidence was given on both sides as to the number of votes which Isaac Hirsch received at the meeting of April 21, 1876, and that question was submitted to the jury, who found that the relator, Isaac Hirsch, received thereat only nine votes, instead of ten, as recorded and entered upon the minutes of the common council.

It further appeared upon the said trial that at a meeting of the common council held on the 26th day of May, 1876, by a vote of ten to eight, the following resolution was passed:

"*Resolved*, That the office of commissioner of alms, for the seventh ward, to which Isaac Hirsch was appointed April 21, 1876, is hereby declared vacant, for the cause of Isaac Hirsch being pecuniarily irresponsible and for the further reason that Isaac Hirsch since he was appointed and has taken the oath of office has publicly stated, that there was less harm done in the sale of lager beer on Sunday than by preaching on Sunday."

This resolution was passed, after receiving evidence to substantiate the charges therein contained.

At the same meeting (May 26, 1876) James McCausland was, by a vote of eleven to seven, appointed alms commissioner, and qualified as such on May 27, 1876.

The only questions of fact, concerning which there was any dispute upon the trial, were in regard to the number of votes Isaac Hirsch received on the 21st day of April, 1876, and whether the entry upon the minutes that he then received ten was correct. It was not contended that the result as announced by the teller did not correspond with the record; but it was claimed that there was an error in the count of the tellers; that one Michael Cummings, an alderman, had

voted for McCausland, and such vote had been erroneously allowed to Hirsch.  There was consequently no other issue submitted to the jury, and it was agreed by counsel that the court, after argument, should direct a general verdict to be entered, as if found by the jury, according to its judgment, upon the merits of the whole case.  Such argument having been heard, it becomes the duty of the court to direct such verdict.

It is claimed by the relator, that the entry upon the minutes of the common council, that he had received ten votes for alms commissioner, and was duly elected, cannot be questioned, except by a direct proceeding to attack the record.  *The People* agt *Zeyst* (23 *N. Y.*, 140) gives to this objection some color.  The question, however in that case, was not whether the records of a town meeting which stated a certain number of votes cast for a candidate could be impeached, but whether an entry upon the minutes declaring that a certain place had been fixed for the next meeting could be contradicted and shown to be erroneous.  The general doctrine in this state is, that when the title to an office depends upon the votes, the certificate of election is not conclusive.  And this doctrine has been expressly applied to officers elected at town meeting, and the conclusiveness of the entries upon the town minutes (*The People* agt. *Seaman*, 5 *Denio*, 409).  In *The People* agt. *Zeyst*, above cited, it is evident that the question was a very different one.  It related to the place of the election and not to its result, the court holding that the minutes were controlling upon that issue.  The soundness of the general rule, to which allusion has been made, is not controverted, but on the contrary it is expressly admitted by judge DENIO, who pronounced one of the opinions (*p.* 147) in these words :  " It is argued that because the court can, in this class of actions, look behind the written evidence of title in order to see whether one claiming an office was lawfully chosen, the general rules of evidence may be dispensed with in relation to other matters

connected with the election. But we think that is not sound argument. One who is challenged for usurping an office is bound to show that he was lawfully chosen, and cannot altogether rely upon the official canvass or the certificate of election. The nature of the proceedings calls upon him to maintain the truth of what these papers state ; but in regard to preliminary and collateral matters, the ordinary rules of evidence prevail." The objection of the relator's counsel must be overruled, provided the appointment depended upon the number of votes he received.

Allusion has already been made to the provisions of the charter of the city of Kingston, which (sec. 16) declares, that "the mayor and aldermen of the city shall constitute the common council thereof," and (sec. 28) that no appointment to office can be made " except by a concurring vote of a majority of all the members of the council in office." As the mayor and aldermen make the common council, and the common council appoints, it follows, that the vote of the mayor has the same effect as that of any other member of the body, and that the statute which declares that a " concurring vote of a majority of all the members of the council in office," is necessary to make valid " any appointment to office " means only that the person must receive a majority of all the votes of the members of the common council in office, counting the mayor as one of such members, and not that the vote of the mayor for the successful candidate is necessary, as claimed by the counsel for the defendant. But it is equally clear that Mr. Hirsch had to receive a majority of all the votes of the members in office to make his title to the office good. The jury has expressly found that he received no such majority, and though the court is free to confess that it would have come to a different conclusion from that of the jury upon the testimony submitted, yet the evidence given in behalf of the relator does not so clearly preponderate as to justify us in setting aside the verdict.

It is also claimed by the counsel of the relator, that the

People agt. McCausland.

subsequent action of the common council in approving the minutes of the meeting of said April twenty-first, and its refusal to reconsider its supposed action expressed upon its minutes is equivalent to an original appointment. Such an argument, if applied to the case of an alleged agency, would be sound, for subsequent ratification of the acts of a party acting as the agent of another may be equivalent to an original appointment. It fails, however, when applied to the case of a public office, the mode of filling which is declared by the law. The "concurring vote of a majority of all the members of the council in office" was necessary to Mr. Hirsch's valid appointment, and if he failed to receive such a majority none was made. If the minutes were in fact erroneous, no declaration, assertion, or approval could make them correct, nor could a refusal to reconsider supposed action, which had in fact never been had, be deemed equivalent to the actual performance of that which the statute requires. In addition also to these considerations, it must not be forgotten, that the members of the common council may, when the minutes were approved, have supposed them to be correct, and a vote of approval under such circumstances is quite different from a formal approval, with full knowledge, which might more plausibly be urged as equivalent to a new appointment. And so, too, a vote refusing to reconsider an appointment never made may be ascribed as well to the thought that it was needless, as to a deliberate intent to acquiesce in, and confirm a previous illegal appointment. The case of the relator fails utterly to show a ratification of the past with full knowledge, upon which the validity of the argument urged in his behalf, which we are considering, depends, and for this reason as well as for its inapplicability to the case of a public officer, the manner of whose election or appointment is prescribed by law, the point of the relator, that the subsequent action of the common council validated the proceedings of April 21, 1876, cannot prevail.

The cause has thus far been considered upon the alleged

original appointment of Mr. Hirsch to the office in contro-
versy and the conclusion reached is, that the verdict of the
jury establishes the fact that he never was legally appointed,
hence that there should be a general verdict for the defendant.
Assuming, however, that the minutes of the common council
were correct and that Hirsch was legally appointed alms
commissioner on April 21, 1876, there still remains an insu-
perable obstacle to his success, and that is, his removal from
the office by the common council on May 26, 1876. The
charter of the city (*sec.* 16), as has already been mentioned,
expressly enacts that " the common council may remove any
officer for cause, and may fill all vacancies in office by
appointment," and only in cases of an " elective officer " is
it provided that he shall not " be removed without notice
of the charges against him, and an opportunity to be heard in
his defense." This power was exercised at a meeting held
on said twenty-sixth day of May. The removal was for two
causes: First, that Mr. Hirsch was insolvent, and second,
that since his appointment, and after he had taken the oath
of office, he had " publicly stated that there was less harm
done in the sale of lager beer on Sunday than by preaching
on Sunday." The sixth title of the charter, entitled: " Of
the commissioners of the alms-house," prescribes their duties.
It will be seen that they receive and disburse the moneys
raised for the support of the poor, and prosecute for all
violations of the excise law. If the common council, in
judging of Mr. Hirsch's fitness to fill the position of alms
commissioner, in view of its pecuniary responsibilities,
judged that he should be removed because of his insol-
vency, can a court say that such fact was not good
cause for his removal? Has not the statute law of the state
made the insolvency of a trustee good cause to deprive him
of his trust, and should not those who are charged with the
care of the interests of others see to it that officers appointed
by them and removable at their pleasure have the same quali-
fications for the execution of trusts, which the law requires

of them who control and manage estates? And if a public officer, whose duty it is to enforce the laws of the state, and who believes that their violation is productive of good morals, and the cause of less evil than preaching in churches on the Sabbath day, is removed from office, because the tribunal having power so to do thinks that a person entertaining such views should not fill the position, is a court to say that there was no "cause" for such removal, and nullify its action? Because the common council deemed the control and expenditure of the public moneys unsafe in the hands of an insolvent, and because it further considered, from his own declarations, not that he was an irreligious man, but one who, because he thought the sale of an intoxicating beverage on the Sabbath was proper and right in itself, would not properly discharge his duties by prosecuting therefor, Mr. Hirsch was removed from office. Such removal, in our judgment, was lawful and within the express powers conferred. The question is not, whether the court would or would not regard Mr. Hirsch as a safe custodian of public money, or a person who would faithfully discharge his official duty, but whether the body which had the power of removal could exercise such power for such reasons as satisfied them that he was an unsafe and improper person to discharge such duties. We are entirely clear, that with the action of the common council of May 26, 1876, unrevoked and unreversed by a direct proceeding to attack it (even though such a proceeding could be successful, which we think it could not be), the relator has no valid title to the office which he seeks; and that by the appointment of May 26, 1876, made after the removal of Mr. Hirsch, the defendant, James McCausland, has a valid title to the office of alms commissioner of the seventh ward of the city of Kingston.

The defendant is therefore entitled to a general verdict in his favor, which the clerk will enter as of the proper day, in accordance with the stipulation in open court upon the trial.