(24 Misc. Rep. 278.)

## In re DUDLEY.[1]

### (Steuben County Court. July, 1898.)

1. ELECTION CERTIFICATE—VALIDITY.

　　On a proceeding by one having a certificate of election to an office to compel his predecessor to deliver the books of such office, the court cannot go behind a proper certificate of such election.

2. SAME—ELECTION OF CITY CLERK.

　　On a proceeding by one claiming to have been elected to the office of clerk of the city of H. to compel a predecessor to deliver the books of such office, a certificate of election signed by the mayor alone would not establish his election, since the charter of the city of H., as amended by Laws 1889, c. 125, tit. 2, § 10, and tit. 4, § 1, provides that the common council shall make and file, and the mayor shall sign, such certificate.

3. MUNICIPAL CORPORATIONS—APPOINTMENT OF OFFICER.

　　The charter of the city of H., as amended by Laws 1889, c. 125, tit. 3, § 4, provides that no appointment to or removal from office shall be made except by a concurring vote of all the members of the common council in office. *Held*, that the mayor, being a member of such council, would be entitled to a vote upon the appointment of a city clerk.

Application by Horace A. Dudley to compel delivery by Sidney Ossosski of books and papers pertaining to the office of city clerk, to which he claimed to have been elected. Granted.

Milo M. Acker, for petitioner.

Fred A. Robbins, for respondent.

ROBINSON, J.　This matter comes before me upon the petition of Horace A. Dudley, who claims to have been appointed city clerk of the city of Hornellsville, N. Y., to which an answer is filed by Sidney Ossosski, who claims to be the clerk holding over by reason of a previous appointment. The petitioner, Dudley, presents the certificate of the mayor hereinafter referred to as conclusive in these proceedings, and the respondent, Ossosski, spreads upon the record all that took place leading up to such certificate, about which there seems to be no dispute; and the respondent contends that, upon the face of all these proceedings, there is just one question to be determined: Had the mayor the right to vote with the aldermen to make the appointment, there not being a tie vote? Whatever difference of opinion there may have been under the older decisions, it is now settled that we cannot go behind the proper certificate, cannot determine any disputed question of fact, and cannot try the title to an office. In re Bradley, 141 N. Y. 527, 36 N. E. 598; In re Sells, 15 App. Div. 571, 44 N. Y. Supp. 570; In re Foley, 8 Misc. Rep. 196, 28 N. Y. Supp. 611.

The papers show—and the facts appear to be undisputed—as follows:

That on the 18th day of April, 1898, there were 11 members of the common council present, including the mayor, at a regular meeting of the common council, when the following took place:

"By Scovil: Whereas, there is now no city clerk, except Sidney Ossosski temporarily discharging the duties of city clerk: Now, therefore, be it resolved that Horace A. Dudley be, and he is hereby, appointed city clerk. Ayes: Baker, Jones, Langworthy, Prangen, Schwingle, Scovil,—6. Nays: Bennett, Greene, Kieley, Waldorf,—4. The mayor declared that he voted in the affirmative also, and declared the resolution carried."

[1] Reversed on appeal. See 53 N. Y. Supp. 742.

—That said resolution, on the 22d day of April, 1898, was duly signed and approved in writing by the persons required so to do, provided that the signature of the mayor, the seventh member of the common council, was sufficient for that purpose, and filed in the clerk's office of said city on the 22d day of April, 1898. That, on the same day, said petitioner took the constitutional oath of office as city clerk, and on the 23d day of April, 1898, filed the same in the city clerk's office, a copy of which oath is annexed to the petition herein, marked "Exhibit C." That on the 25th day of April, 1898, said petitioner executed and filed a bond to the said city of Hornellsville in the sum of $1,000 in the usual form, a copy of which bond is annexed to the petition, and marked "Exhibit D." That on the 2d day of May, 1898, at a regular meeting of the common council of said city, a quorum thereof being present, the said common council approved of said bond. A copy of such resolution and the approval thereof, and the vote thereon, is annexed to the petition, and marked "Exhibit E." That on the 6th day of May, 1898, a certificate of appointment of said petitioner, as city clerk of the city of Hornellsville, was made under the seal of said city, and over the signature of the mayor thereof, a copy of which certificate is attached to the petition, and marked "Exhibit F."

The respondent's counsel asks me to determine whether, upon these papers, Horace A. Dudley appears to be clerk of the city of Hornellsville, and, as such, entitled to all the books and papers, and admits that, if it so appears, the order prayed for should be granted; otherwise, denied. Without determining whether the certificate of the mayor presented by the petitioner is sufficient, let us look at the matter as presented by the respondent.

The charter of the city of Hornellsville has the following provisions:

"The common council shall be composed of the mayor and aldermen." Title 3, § 1.

"Each alderman present at any meeting of the common council shall have a vote on every question brought before the common council for its consideration, except as herein otherwise provided. * * * The presiding officer shall in case of a tie, have a casting vote." Title 3, § 2.

"A quorum shall consist of a majority of the common council. No tax or assessment shall be ordered nor any appointment to or removal from office made, except by concurring vote of a majority of all members of the common council in office; and no tax levy, assessment, order, resolution or ordinance shall take effect until after the same shall have been approved in writing by the mayor, except as herein otherwise provided." Title 3, § 4, Laws 1888, c. 40, thus amended by Laws 1889, c. 125.

"The common council shall appoint, and at its pleasure remove, an attorney, city clerk, engineer, street commissioner, fire warden * * * and such other officers as hereinafter specified." Title 2, § 1.

"The common council shall make and file with the clerk a certificate of every appointment to office, and the clerk shall notify each person so certified to have been appointed, of his appointment, in the manner and within the time specified in this section for notifying persons elected to office." Title 2, § 10.

"He [the mayor] shall sign all appointments to office made by the common council, and all warrants ordered by it for the payment of the money by the chamberlain." Title 4, § 1.

According to the above provisions of the charter of the city of Hornellsville, has the mayor the right to vote for the appointment of city clerk? It will be observed that the mayor does not nominate or

appoint unless he does so as a member of the common council, while each alderman, according to title 3, § 2, has a right to vote on every question. The whole common council (aldermen and mayor) shall appoint a city clerk, according to title 2, § 1, but no appointment to office shall be made, except by a concurring vote of a majority of all the members (aldermen and mayor) of the common council in office. Title 3, § 4. The common council shall make and file a certificate (title 2, § 10), but the mayor shall sign it (the certificate of appointment) made by the whole common council (title 4, § 1); so that it would appear that for many purposes the power is alone conferred upon the aldermen to vote, but in the case of a levy of a tax or assessment, and the appointment and removal from office, it requires seven votes of the common council, composed of the mayor and aldermen. I am not unmindful of the ingenious argument of the counsel wherein he asserts that the presiding officer, by this means, could vote to make a tie, and then vote to break it; but this could not, by any means, apply where it requires seven votes or a majority of the common council to make the appointment. The casting vote of a presiding officer in the case of a tie must, necessarily, only have reference to matters upon which he is not empowered to vote with the other members of the common council. A majority of the common council (seven) having voted in the first instance, there could be no opportunity to make a tie, and certainly none to break. Where it says that it requires the vote of the majority of the common council, it means that each member only of the common council shall have one vote. Having voted once, as a member of the common council, the right of the mayor is thereby exhausted; and the provisions in relation to the presiding officer having the casting vote in the case of a tie under the foregoing provisions clearly have reference to matters other than the levying of a tax or an assessment, or the appointment or removal from office, according to the literal interpretation of the language of this charter.

I have carefully examined the action in the nature of a quo warranto,—People v. Ransom, 56 Barb. 514, known as the Lockport Case, —but the charter there in question read as follows:

"The officers of said city, whose election is not herein provided for, shall be appointed by the common council, on the nomination of the mayor, if they concur in his nomination, and if not, they shall appoint on the nomination of any member of the common council." Title 2, § 1.

Notice the use of the pronoun "they,"—the plural. The mayor nominates, and they (aldermen) appoint, not "it"—singular, the common council—appoint, as provided in the charter of the city of Hornellsville. For the purpose of making any appointment, the mayor in the Lockport charter nominates, and the common council (as there used, with the subsequent word "they," must mean the aldermen) appoint. And the other provisions of the Lockport charter were construed with this wording in mind. For that reason it was held to mean a majority of the said aldermen. It was there held that, where it was the duty of the mayor to nominate, he had no right to vote upon that nomination, except in the case of a tie, and that, in that sense, the Lockport charter was construed to mean that the ap-

pointment was to be made by the aldermen upon the nomination of the mayor. The opinion says that:

"If appointments are to be made, he is to nominate, and the common council to appoint. And, if that body fails to concur in his nomination, even that power may be exercised by a member of the common council, as distinguished from himself. Under this clear distribution of their powers, it could hardly be supposed that the legislature intended that he should exercise the power of voting also."

Had the charter of the city of Hornellsville provided that the mayor was to nominate and the common council to appoint, then the case of People v. Ransom would have been an authority here. It was practically held, under the charter of the city of Lockport, that under no circumstances could the mayor vote except in the case of a tie; but that decision was based upon the fact that it was made the duty of the mayor to nominate and the common council to appoint the city clerk, and it was there held that, when the language was used in that way, it practically meant that the mayor was to nominate and the aldermen to appoint the city clerk. What the court would have held had the charter read the same as that of the city of Hornellsville it is impossible to conjecture, but, at any rate, it is left as an open question for the courts hereafter to determine. We are not responsible for legislation or its results, but believe it to be a duty not to depart from the plain language that "the common council [mayor and aldermen] shall appoint." This language means just what it says,—no more and no less.

My attention has been called to an action in the nature of a quo warranto,—People v. McCausland, 54 How. Prac. 151. In this case there were 18 aldermen and a mayor. The alms commissioners of the city of Kingston were appointed by the "common council thereof," and the common council was composed of "the mayor and aldermen of the city," and it was expressly declared that they "shall constitute" the same. Two members of the common council were absent. Ten votes were recorded for the relator, and seven, including that of the mayor, for the defendant. The jury determined that there was a mistake in the count; one of the relator's votes should have been given to the defendant; and the court held that he, not having a majority of the members of the common council, was not entitled to the office. Justice Westbrook uses this language:

"Allusion has already been made to the provisions of the charter of the city of Kingston, which declares that the 'mayor and aldermen of the city shall constitute the common council thereof,' and that no appointment to office can be made 'except by a concurring vote of a majority of all the members of the common council in office.' As the mayor and aldermen make the common council, and the common council appoints, it follows that the vote of the mayor has the same effect as that of any other member of the body, and that the statute which declares that 'a concurring vote of a majority of all the members of the common council in office' is necessary to make valid 'any appointment to office' means only that the person must receive a majority of all the votes of the members of the common council in office, counting the mayor as one of such members, and not that the vote of the mayor for the successful candidate is necessary, as claimed by the counsel for the defendant."

It will be seen here that the position was taken by the defendant that it was absolutely necessary that the mayor should vote with the successful candidate, but that the court in this case held against such contention, although, perhaps, this dictum was not necessary to render the decision made. These are the only two cases cited in which this question is discussed, but in neither case was the exact point in controversy. Here the respondent claims it is the pivotal point upon which the decision must be made, so that it seems to me that the question is an open one to be determined upon the provisions of the charter of the city of Hornellsville.

The counsel for the petitioner herein takes the position that the term "presiding officer" refers simply to the alderman called to the chair in the absence of the mayor; but I cannot concur in so narrow a construction of the doubtful language used. The counsel for the petitioner also takes the position that the certificate of the mayor alone presented by him is the only matter for me to consider; but it seems to me that, under the language of the charter, the common council is to make and file this certificate of appointment, although it is the duty of the mayor to sign the same, all of which has been done. Title 2, § 10; title 4, § 1. Both parties to this controversy concede that such a certificate was made by seven members of the common council, viz. six aldermen and the mayor, and that all the other necessary steps were taken to make Horace A. Dudley city clerk of the city of Hornellsville, and to entitle him to the books and papers prayed for in the petition herein, provided the appointment was in fact made and filed by a majority of the common council, within the meaning of the provisions of the charter of the city of Hornellsville. In my opinion, there can be no escape by the petitioner from the determination of the legal question in these proceedings of the real matter in controversy, viz. was the mayor a member of the common council, entitling him to vote upon the appointment of the city clerk? We believe that the logic of the provisions of the charter upon the subject leaves no room to doubt and hold, as in the Lockport Case, that the mayor had any separate and distinct function or duty to perform in relation to an appointment to office that was not also possessed by every member of the common council; in other words, by the charter of Hornellsville, a concurring vote of a majority of all the members of the common council constituted all that was necessary, and not even a nomination was required to be made by the mayor. If I am to take my choice between the dictum in the Lockport Case and the dictum of the Kingston Case, I prefer to rest upon the latter, as the charter was almost identical with that of Hornellsville.

The order prayed for is granted. Order granted.