(37 Misc. Rep. 191.)

### PEOPLE ex rel. ARGUS CO. v. BRESLER et al.[1]

(Supreme Court, Special Term, Albany County. February, 1902.)

1. CITY OF SECOND CLASS—COMMON COUNCIL—POWER OF PRESIDENT.
    Laws 1898, c. 182, §§ 13, 29, making the president of the common council of a city of the second class a member thereof, give him, as such, a right to vote on the question of designating the official newspapers of such city.

2. SAME.
    The right given by the charter of cities of the second class to the president of the common council to vote on the designation of the official newspaper is not impliedly taken away by section 14 of said charter, declaring that the president may vote like other members of the common council on all resolutions and ordinances in case of a tie vote.

Application by the people, on the relation of the Argus Company, for writ of mandamus to Frederick U. Bresler, clerk of the common council of Albany, and the Press Company. Application denied.

Amasa J. Parker, Jr., for relator.

Arthur L. Andrews, Corp. Counsel, for defendant Bresler.

John F. Montignani and William P. Rudd, for defendant Press Co.

CHESTER, J. The relator seeks by this application to compel the clerk of the common council of Albany to deliver to it for publication in the Argus all matter required by law to be published in the official papers of that city. Albany is one of the cities of the second class. The law governing cities of that class provides for the designation of two daily newspapers published in the city to "be the official papers for two years and until others are designated." In January, 1900, the Albany Evening Journal and the Argus were duly designated as the official papers. On January 2, 1902, the common council which had been elected in the prior November held its first meeting, the president and all of the nineteen aldermen being present, and passed a resolution to proceed to designate two official papers. Under direction of the president, the clerk then called the roll, and, by a viva voce vote, seven aldermen voted for the Albany Evening Journal, five for the Albany Argus, five for the Press-Knickerbocker-Express, and two for the Times-Union. The president voted for the Press-Knickerbocker-Express, and thereupon he declared that the Albany Evening Journal and Press-Knickerbocker-Express had received the highest number of votes and were duly designated as the official papers for the years 1902 and 1903. The relator insists that the president had no lawful right to vote; that as the Argus, the paper published by it, and the Press-Knickerbocker-Express, the paper published by the defendant, the Press Company, had an equal number of votes without counting the vote of the president, there was no legal designation, and therefore the Albany Evening Journal and the Argus continue to be the official papers, pursuant to the designation of 1900.

The sole question presented for determination is whether or not the president had the right to vote upon the designation of official papers. The law which has come to be known as the charter of cities

[1] Reversed on appeal. See 75 N. Y. Supp. 209.

of the second class (Laws 1898, c. 182) provides, in article 2, entitled "Common Council," section 13, that:

"There shall be elected * * * a president of the common council from the city at large * * * and one alderman from each ward of the city * * * who shall hold their offices for two years; and the president and aldermen thus elected shall constitute the common council."

Section 29 of the same article provides that:

"At the first meeting of the common council after the election of its members, it shall, by a viva voce vote, designate two daily newspapers published in the city to be the official papers of the city. Each member shall be entitled to vote for one of the papers, and the two papers having the highest number of votes shall be the official papers for two years and until others are designated."

Where, as in the law above quoted, it is enacted that "the president and aldermen * * * shall constitute the common council," it would be an unreasonable construction to hold that the president alone, or the aldermen alone, constitute the common council, for that would be directly contrary to the provision that all of them shall constitute it. The language of the act is equivalent to saying that they are all members of the council. The law also provides that "each member shall be entitled to vote for one of the papers." The provision is not that each alderman may vote, but that each member may. It is clear, therefore, from these two sections, standing alone, that the president had the right to vote upon the designation of the official papers, for the right is expressly given to him. That the president is a member is also clearly shown by the very significant expression contained in section 14, hereafter referred to, where it is said, "The president may vote like other members of the common council," etc. But it is urged on behalf of the relator that the cases of People ex rel. Gaskill v. Ransom, 56 Barb. 514, and In re Dudley, 33 App. Div. 465, 53 N. Y. Supp. 742, are decisive against this view, and also that by it no force or effect is given to section 14 of the same article, which provides that, "The president may vote like other members of the common council upon all resolutions and ordinances submitted to the body for its action in case of a tie vote," the claim being that when, as here, the president is given the casting vote in case of a tie, the power to vote in any other case is impliedly withheld from him. That claim would be good if the implication to that effect had not been done away with by the express enactment giving him, in addition to his casting vote, in case of a tie, upon resolutions and ordinances, the right to vote upon the designation of official papers, as above shown. Nor are the cases cited authorities against the proposition. The Dudley Case involved the construction of the charter of Hornellsville. Laws 1888, c. 40. It was there provided that "the common council shall be composed of the mayor and aldermen"; that "the mayor when present shall preside at all meetings of the common council"; that "each alderman present at any meeting of the common council shall have a vote on every question brought before the common council for its consideration"; and that "the presiding officer shall, in case of a tie, have a casting vote." The charter further required that the votes of a majority of all the

members of the common council—twelve in number—should be necessary to the adoption of the resolution appointing a city clerk. It was held, upon the authority of the Gaskill Case, that a resolution appointing a clerk, for which six aldermen voted, with four aldermen voting against it, could not be adopted by the vote of the mayor in support thereof. The reasons for this are perfectly apparent without looking at the Gaskill Case for an authority. First, each alderman and not each member was given the right to vote; and, second, the mayor, notwithstanding he was a member, was given no such right, except in case of a tie, which did not exist at the time he assumed the right to vote. In the Gaskill Case it appears that four of the aldermen of the city of Lockport voted in favor of the defendant as city clerk; that three aldermen voted against him; and one alderman was absent. The charter of Lockport (Laws 1865, c. 365, tit. 3, § 2) provided that "in the proceedings of the common council each alderman shall have one vote, and the mayor shall have a casting vote when the votes of the members are tied." The city was divided into four wards, each of them having two aldermen, and the charter declared (Id. § 1) that they, together with the mayor, constituted the common council. It was held that the mayor had no right to vote. But there again it was the "aldermen," not the "members," who were given the right to vote, and the mayor, although made a member of the common council, was given no such right, except when the votes of the other members were tied. Mr. Justice Daniels, in writing the opinion of the general term in that case, recognizes the distinction between the situation there presented and the one here presented for determination when he says:

"When, therefore, the statute provides, as it does, that the mayor shall have a casting vote when the other members of the council are tied, without either expressly or by clear implication conferring the power upon him to vote on any other occasion, or under other circumstances, that power is as effectively withheld from him as it would have been by an explicit prohibition on the subject."

In the case we are now considering, the power of the president to vote on designating official papers is not only not withheld, but is expressly given to him; so that the cases referred to are not authorities against, but rather support, his right to vote.

It follows that the Press-Knickerbocker-Express was lawfully designated as one of the official papers, and, therefore, that the term of the Argus as an official paper has expired.

Much was said upon the argument concerning the right of the president, if regarded as a member of the common council, to vote upon other questions, and as to the number required to constitute a quorum or to pass ordinances requiring a majority or a three-quarters vote; but it is enough to say that none of these questions are here for determination, and it will be time enough to decide them when a case arises making it necessary to do so.

The application for a mandamus must be denied, with $10 costs.

Application denied, with $10 costs.