WILLIAM P. LAUNTZ

*v.*

THE PEOPLE *ex rel.* John M. Sullivan.

*Filed at Mt. Vernon January 22, 1885.*

1. PLEADING AND EVIDENCE—*as to allegations not traversed.* To an information in the nature of a *quo warranto* to test the defendant's right to an office, the defendant filed a plea showing his appointment to the office by the city council, the filing of his oath of office in proper time, and the approval of his official bond. The relator, by replication, denied the appointment and the approval of his bond: *Held,* that as the filing of defendant's oath of office was not traversed, it stood confessed by the pleadings.

2. MUNICIPAL CORPORATIONS—*election or appointment of city officers— of the number of votes required.* Where a city council, consisting of eight aldermen and a mayor, are all present, or a quorum is present, and the election of an officer is properly proposed, whoever receives a majority of those who do vote will be elected, although a majority of the members of the council may abstain from voting, or may even protest against the election.

3. SAME—*when the mayor may vote.* Under a city charter which gives the mayor a right to vote only in case of a tie, if four out of the eight councilmen vote in the affirmative, and the other four, though present, refuse to vote either way, the mayor may treat those not voting as opposed to those who have voted, and decide the question by voting also in the affirmative.

4. SAME—*approval of city treasurer's bond.* At a full meeting of a city council, consisting of eight aldermen and a mayor, on motion to approve the

city treasurer's bond, and upon a call for the ayes and noes, four councilmen voted in favor of the motion and the other four refused to vote, and the mayor thereupon declared the motion carried, voting also in the affirmative: *Held,* that as the approval of the officer's bond was of the same nature as his election, without which the election was unavailing, the same rule as in elections should apply, and a majority of those voting having voted in the affirmative, the bond was legally approved.

5. SAME—*effect of approving official bond not filed in time.* The charter of a city provided that when an officer appointed fails to qualify within ten days after notice of his appointment, the office shall be filled by a new appointment: *Held,* that a failure to give bond within the time was but a cause of forfeiture of the office, which the city council might waive, and that a subsequent approval of the official bond of the person appointed was a waiver in that regard.

6. APPEALS—*reviewing facts—as a question of law.* Where there is no dispute as to the facts of a case, the question being whether such facts sustain a plea of justification in a proceeding by *quo warranto,* this court will pass upon the facts, as what they show is a question of law only.

APPEAL from the Appellate Court for the Fourth District; —heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. WM. H. SNYDER, Judge, presiding.

This was a proceeding by *quo warranto,* the defendant being charged with usurping and unlawfully holding the office of city treasurer of East St. Louis. The defendant justified by pleading that he had been duly appointed to the office by the city council of East St. Louis, on May 7, 1884; that his oath of office was filed May 8, 1884, and that his official bond was accepted and approved by the city council on May 21, and again on May 29, 1884. Replications were filed, denying, first, that defendant had been so appointed; and secondly, that his bond had been accepted and approved. The cause was tried upon these issues.

The bill of exceptions states that the defendant proved that he was appointed to the office of city treasurer at a meeting of the city council held on May 7, 1884, at which the mayor and five councilmen were present, and at which meeting a ma-

jority of the said five councilmen voted for his appointment; that on May 21, 1884, there was a special meeting of the city council called for the purpose of approving the minutes of the meetings of the council held on May 7 and 16, 1884, and approving the official bond of the defendant, at which meeting all of the members of the council, eight in number, and the mayor, were present, and that on those questions, on a call of the roll of the members of the council, by a vote by yeas and nays, which was entered upon the journal, four councilmen voted in favor of said motions and the other four refused to vote, and the mayor thereupon declared the motions carried; that on May 29, 1884, at a special meeting of the council duly called to read the minutes of previous meetings, and to take action in regard to the appointment and qualification of city officers, all of the councilmen and the mayor were present, and on the questions of approving the minutes of the previous meetings, and approval of the official bond of the defendant, four councilmen and the mayor voted in the affirmative, on a call of the roll of members of the council for the yeas and nays, and the other four refused to vote, and did not vote, and the mayor thereupon declared said motion carried; that the city of East St. Louis is organized under an act of the General Assembly of the State of Illinois, entitled "An act to reduce the charter of the city of East St. Louis, and the several acts amendatory thereto, into one act, and to revise the same, approved March 26, 1869." (1 Private Laws, 1869, p. 885.) The defendant also gave in evidence an oath of office taken by him, a commission issued to him by the mayor of the city, and an official bond as treasurer of the city of East St. Louis,—and this was all the evidence; and thereupon the court, a jury having been waived, found the issues for the People, and the defendant guilty, and after overruling a motion for a new trial, made upon the ground that the finding was contrary to the law and to the evidence, rendered judgment of ouster, which was affirmed by

the Appellate Court for the Fourth District, and the defendant took the present appeal to this court.

The charter directs the city council to require of each one holding an office of trust in the city, a bond, with sufficient penalty and security, etc.; requires the council to exercise all its powers by ordinance; provides that "a majority of the councilmen shall constitute a quorum to do business;" directs the council "to determine the rule of its proceedings in conformity with the usual practice of deliberative bodies;" requires the council to keep a journal of its proceedings, and that "the yeas and nays, when demanded by any member present, shall be entered on the journal;" makes the mayor presiding officer at city council meetings, and gives him a casting vote in case of a tie, and no other; provides that any office, where the officer appointed fails to qualify within ten days after receiving notice of his appointment, shall be filled by a new appointment; prescribes the oath of office required of each one elected or appointed to any office, to be made, subscribed and filed before entering upon his office. Under the ordinance in the record, by the stipulation of the parties, the treasurer is required, after his appointment, in addition to making, subscribing and filing the prescribed oath of office, and "before entering upon the duties of the office," to "give an official bond, in the penal sum of $100,000, payable to the city, with sureties to be approved by the city council."

Mr. M. MILLARD, and Mr. GEORGE F. O'MELVENY, for the appellant:

The failure of a city officer to give his bond within the time required by law is only a cause for his removal, which may be waived; and is waived, by a subsequent approval of the bond. Dillon on Mun. Corp. sec. 153; *Cawley* v. *People*, 95 Ill. 249; *Chicago* v. *Gage*, 95 id. 621; *State ex rel.* v. *Ely*, 43 Ala. 568; *State ex rel.* v. *County Court*, 44 Mo. 230; *Ross* v. *Williamson*, 44 Ga. 501.

After an election of a city officer has been properly proposed, whoever receives a majority of those who vote, there being a quorum present, is elected, although a majority of the council abstain altogether from voting. Wilcox on Corporations, sec. 546; 2 Kyd on Corporations, 12; Angell & Ames on Corporations, secs. 126, 127; *Commonwealth* v. *Read,* 2 Ashm. 261; *Rex* v. *Foxcraft,* 2 Burr. 1017; *State* v. *Green,* 37 Ohio St. 227.

It is unsound to say that one-half of. a representative body, when a casting vote is given to the presiding officer, may defeat a measure by refusing to vote.

Mr. A. S. WILDERMAN, Mr. R. A. HALBERT, and Mr. JOHN B. BOWMAN, for the appellee, contended that all controverted questions of fact were conclusively settled by the judgment of the Appellate Court.

The mayor of the city has a casting vote, in case of a tie, and no other. There are eight councilmen, five of whom are necessary to a quorum. The mayor is not counted as one of the quorum.

Counsel insisted that the issues were, whether the appellant was ever legally appointed to the office, and if so, whether he qualified as such. After failing to give his bond in time, the city might waive its right to a new appointment by approving the bond, but he could not compel action on his bond then.

A distinction has been made in proceedings for the election of corporate officers and for the transaction of business. In the first, a majority of those voting, if a quorum is present, elects, while in the case of other business, a majority must vote for the measure or proposition. *Gosling* v. *Veley,* 53 Eng. C. L. 439; 4 H. L. Cases, 679; *State* v. *Green,* 37 Ohio St. 227.

When a statute points out a particular course to be pursued to effect a particular purpose, no other course can be pursued. *County* v. *McFarlan,* 82 Ill. 146; *Cawley* v. *People,* 95 id. 256.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

Defendant's appointment to the office is admitted by appellee's counsel. The filing of his oath of office is averred in the plea, and not traversed by the replication. It therefore stands confessed by the pleading, so that all there is remaining to give to defendant complete title to the office of city treasurer, is the approval by the city council of his official bond.

There were eight members in the body of the city council; a quorum consisted of five members; the mayor had a casting vote in case of a tie. On the 21st and 29th of May, the council being duly convened, and all its members present, a motion was made to approve defendant's bond, and one-half of the aldermen (four) and the mayor voted to approve the bond, and the other half refused to vote. This action of the city council, it is claimed by appellant, was a valid approval of the bond. On the other hand, it is contended that a majority of the aldermen present (five) should have voted in its favor, to make a valid approval of the bond. In respect of the election of corporate officers, the well settled rule is, as stated in Wilcox on Corporations, sec. 546: "After an election has been properly proposed, whoever has a majority of those who vote, the assembly being sufficient, is elected, although a majority of the entire assembly altogether abstain from voting, because their presence suffices to constitute the elective body; and if they neglect to vote, it is their own fault, and shall not invalidate the act of the others, but be construed an assent to the determination of the majority of those who do vote; and such an election is valid though the majority of those whose presence is necessary to the assembly protest against any election at that time, or even the election of the individual who has the majority of votes." And see Angell & Ames on Corporations, secs. 126, 127; *Rex* v. *Foxcraft*, 2 Burr. 1017; *Commonwealth* v. *Read*, 2 Ashm. 261; *State* v. *Green*, 37 Ohio St. 227. This doctrine is admitted by

appellee's counsel, with respect to elections; but they claim that it is limited to cases of elections, and does not extend to the transaction of other corporate business,—that in the latter case a majority of those present must vote for a proposition, to carry it. There is authority for this distinction. *Gosling* v. *Veley*, 4 H. L. Cases, 679.

It is further insisted that as the city charter directs the city council "to determine the rule of its proceedings in conformity with the usual practice of deliberative bodies," the parliamentary rule which is adopted by such bodies should obtain, and that that rule requires the vote of a quorum to transact business, and that where the roll is called, and the yeas and nays are taken, and it appears from the response to the call that no quorum is voting, business must be suspended till a quorum answers. We do not find it necessary here to pass upon these positions of appellee's counsel, for, conceding their correctness, we think the admitted rule which applies in cases of elections should be taken to govern in this case of approval of the bond, as being a thing pertaining to the matter of the officer's appointment. The appointment and approval of the bond are both necessary to the investiture of the office. Both are to be by the same body, and we think they may be looked upon as an entirety in investing any one with the office,—that the approval of the bond is a step in the completely filling of the office of city treasurer by the city council, and thus is not other business, but the same business with that of the officer's appointment. What the propriety of separating the proceeding, and requiring another mode of expressing the will of the council in the approving of the bond than in the choosing of the officer? We see not why, properly enough, the same rule may not be held to cover the whole proceeding of the making of the officer, and that the same vote in respect of number of members voting, which admittedly suffices in the case of the election of the officer by the city council, should be deemed sufficient for the approval

of the officer's bond.   This should be so, unless the authorities forbid.   Where the members of the council are equally divided, four voting one way and four the other, there is a tie, and the mayor may vote with either side, and make a majority.   What reason is there why, when all the eight members are present, and four vote and four refuse to vote, the mayor should not vote with one side or the other, and make a majority?   Why may it not be considered as equivalent to a tie, counting the members who do not vote as voting the contrary way from the mayor?   This would be fulfilling the purposes of the law in giving the mayor a casting vote in case of a tie.   It would enable the making of a majority, and prevent the obstruction of business by refusing to act, and would be giving effect to the will of the majority, which is the governing rule in the action of corporations.   (Angell & Ames on Corporations, sec. 499.)   What the propriety of giving to a refusal to vote more potency than to a vote cast?— of allowing a gain from violation of duty, in making the refusing to vote of more effect in governing the action of the body of which one is a member, than voting?   The charter provision, that where the officer appointed fails to qualify within ten days after receiving notice of his appointment, the office shall be filled by a new appointment, did not render the appointment void on failing to qualify within the time; but such failure was but a cause of forfeiture of the office, which the city council might waive, and they did here waive it, in proceeding afterward in the approval of the bond.   *Chicago* v. *Gage*, 95 Ill. 621; *Cawley* v. *People*, id. 249.

It is said that all controverted questions of fact were finally settled by the judgment of the Appellate Court, and therefore the judgment of that court must be conclusive.   It is true that under the Practice act the reëxamination of cases brought to this court is to be in respect of questions of law only, and that no assignment of error is to be considered which calls in question the determination of the court below upon contro-

verted questions of fact in any case except as there provided. But in the present case there is no controverted question of fact. Appellee's counsel say, in their brief, "there is no controversy as to the facts, and that the only question in either the trial court or the Appellate Court was as to their legal effect." The question is, whether the uncontroverted facts sustain the defendant's plea of justification, which is a question of law only, and we answer it in the affirmative.

The judgment of the Appellate Court must be reversed and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE MULKEY: I dissent from the opinion in this case.