In the Matter of ARTHUR M. CROMARTY, Individually and as a Member of the Board of Supervisors of Suffolk County, Respondent, v. WILLIAM LEONARD, as Presiding Officer of the Board of Supervisors of Suffolk County, et al., Appellants; DAVID ZARON, as Secretary of the Civil Service Commission of Suffolk County, et al., Respondents.

Second Department, May 31, 1961.

*Reginald C. Smith* for appellants.

*Eugene J. Blumberg* for Arthur M. Cromarty, respondent.

NOLAN, P. J. We are required on this appeal to determine, with respect to a Supervisor's abstention from voting on a resolution offered by a member of the Board of Supervisors of Suffolk County, whether the Chairman or presiding officer of the board has the power to record such abstention as a vote against the adoption of the resolution.

The essential facts are not in dispute.

Petitioner Cromarty is the Supervisor of Babylon Township in Suffolk County and, as such, sits on the Board of Supervisors with the Supervisors of nine other towns.

The Suffolk County Charter provides (L. 1958, ch. 278, § 201) that the Board of Supervisors shall be the legislative and policy determining body of the county, and shall, except as otherwise expressly provided, have and exercise all the powers and duties of the county. It is authorized (§ 202) to exercise all powers of legislation provided in article IX of the State Constitution

and in the charter; and it is charged with the duty, *inter alia*, of making appropriations and levying taxes for the purpose of carrying out the powers and duties imposed upon the county.

With respect to the office of County Attorney, the charter provides that there shall be a County Attorney who shall be appointed by the County Executive with the approval of the Board of Supervisors (§ 1501).

With respect to the functioning of the board, the charter provides that each Supervisor shall have one vote; that a majority of the whole number of the members of the board shall constitute a quorum; and that, except as otherwise provided by law, the "local laws and resolutions shall be adopted by a vote of not less than a majority of the total membership of the board"; and that, at any board meeting, in case of a tie vote on any matter (except with respect to matters specifically excluded) "the county executive shall have a casting vote" (§ 203). To override the County Executive's disapproval of a local law or resolution, an affirmative vote by two thirds or by a majority of the total membership of the board is required depending on the circumstances as provided by the charter (§ 206).

The charter further provides that it must be liberally construed to effect its objects and purposes (§ 2307).

At the board's organizational meeting on January 4, 1961, all 10 members being present, appellant Leonard was elected as the presiding officer or Chairman. The first resolution which fixed the time for the board's regular meetings passed unanimously. Then, the County Executive submitted for the board's approval the name of the person whom he proposed to appoint to the office of County Attorney.

A resolution was offered approving such appointment. The vote thereon was 5 in favor, 4 opposed, and 1 not voting. The one not voting was the petitioner Cromarty. Thereupon the Chairman ruled that petitioner's abstention should be counted as a negative vote opposed to the adoption of the resolution; the Chairman directed the Clerk of the board so to record it; and the Chairman further ruled that the County Executive had the power to cast and should cast the deciding vote. The County Executive then voted to approve his appointment of his nominee for the office of County Attorney, and the Chairman announced that the resolution approving the appointment was carried.

At the same meeting another resolution creating, designating and abolishing certain positions in the county was offered. The vote again was 5 in favor, 4 opposed, with petitioner not voting. The Chairman again made the same ruling, whereupon the County Executive voted in favor of the resolution.

It is alleged in the petition and admitted in the answer that the Board of Supervisors had never adopted any rules of order or procedure; that it was customary for Supervisors to abstain from voting; and that it had never been the custom to record such abstention as an affirmative or negative vote.

Petitioner seeks: (a) to annul the ruling which vitalized his abstention into a negative vote and permitted the County Executive to cast his deciding vote; and (b) to prohibit the payment of any salary by virtue of the resolutions adopted as a result of such ruling.

The learned Justice at Special Term held, in effect, that while there is no New York case precisely in point and that while the authorities in other jurisdictions are in hopeless conflict, the general principles announced in New York decisions require a holding that an abstention may not be counted as a negative vote so as to create a tie with the right to a casting vote by the County Executive. Accordingly, the Justice granted the petition to annul the challenged resolutions.

Appellants, the Chairman and Clerk of the board, contend that an abstention must be counted as a vote; that the Justice at Special Term erred in holding that abstention and absence must be treated alike; and that petitioner, through the medium of his abstention, should not be permitted to frustrate the orderly processes of the Board of Supervisors and to exert more power than he would have had if he voted.

Petitioner, on the other hand, argues that there is nothing in any law or in any resolution of the board which gives its presiding officer the power to record an abstention as either an affirmative or negative vote; that the presiding officer had no such power; and that there was, accordingly, no tie vote entitling the County Executive to a casting vote.

Both parties support their respective contentions with extensive citation of authority, mainly from other jurisdictions. But as the Justice at Special Term stated, those authorities are in conflict and the decisions in this State have not directly passed upon the questions now presented. To refer in detail to all the cases cited would extend inordinately this discussion. Most of the cases are adverted to in the digests and textbooks on the subject (Ann. 40 A. L. R. 808 *et seq.*; Ann. 43 A. L. R. 2d 701 *et seq.*; 2 Dillon, Municipal Corporations [5th ed.], p. 851 *et seq.*; 4 McQuillin, Municipal Corporations [3d ed.], p. 478 *et seq.*; and 62 C. J. S., Municipal Corporations, p. 764 *et seq.*). Reference may be made, however, to some of the cases which are representative of each faction's contentions.

Appellants' position finds support in a Montana case (*State ex rel. Young* v. *Yates,* 19 Mont. 239). The statute there involved required a majority vote of all members of the City Council to confirm appointments of city officers. The Mayor had the right to vote in case of a tie. At a meeting of the council, all 8 members (or aldermen) being present, 4 voted in favor of confirmation, while 4 did not vote, whereupon the Mayor voted in the affirmative. In holding that there had been a legal confirmation, the court said (pp. 242–244): "In the foregoing reasoning we have proceeded in part upon the hypothesis that the four aldermen who remained silent when their names were called to vote upon the question of confirmation were not only properly counted as present, but were also correctly regarded as voting in the negative, and so made a tie. Certainly the respondent cannot contend for any better position than is granted him by this assumption. It is an exploded notion that a member of a legislative body such as a city council can be present at a meeting, thus helping to make a quorum of the body, yet defeat the progress of legislation by refusing to vote when the roll is called. Experience has demonstrated that it is unreasonable to permit the physical [being] to be disunited from the official being under such circumstances. Such practice oftentimes might give to one member, and frequently to an attending minority, an opportunity to accomplish by silence what could not be done by speech, and often render presence, though inactive, more powerful than entire absence. The courts, as well as law writers and parliamentarians generally, have adopted the more rational rule that if a member of such a body join in making a quorum, and sit, his duty is to vote (unless excused for cause), and he will be counted as present whether or not he refuses to answer to the roll call. * * * There is some divergence, however, among the cases upon how to exactly construe the action of such a present member who refuses to vote. It was apparently held in the case of *Launtz* v. *People* [113 Ill. 137, 144], *supra* (decided in 1885), under a city charter which gave the mayor a right to vote only in a case of a tie, that if four out of the eight councilmen voted in the affirmative, and the other four, though present, refused to vote either way, the mayor might treat those not voting as opposed to those who had voted, and decide the matter by voting in the affirmative. But in the later case of *Rushville Gas Co.* v. *City of Rushville* (Ind. Sup.) 23 N. E. 72, a somewhat different view was expressed, the court holding, after a review of cases, that the law is that the members present and not voting assented to the

adoption of the matter then before the council. * * * We are inclined to the opinion that the proper rule is that those who remain silent shall be deemed to assent to the act of those who do vote. * * * If this be correct, then it would seem the relator in this case was confirmed by the virtual consent of those who did not vote; and, there being no tie, the mayor's action was unnecessary. But we can safely rest our decision upon the assumption that there was a tie ''.

The Illinois case (*Launtz* v. *People,* 113 Ill. 137) cited in the foregoing Montana case, was similar to it, except that the *Launtz* case involved the approval of an official bond by the City Council and apparently there was no statutory provision requiring the concurrence of a majority of all the council members for action. In holding in the *Launtz* case that the bond had been validly approved, where all 8 members of the council were present and 4 voted in favor of approval and 4 refused to vote and where the Mayor then voted in the affirmative, the court said (p. 144): '' Where the members of the council are equally divided, four voting one way and four the other, there is a tie, and the mayor may vote with either side, and make a majority. What reason is there why, when all the eight members are present, and four vote and four refuse to vote, the mayor should not vote with one side or the other, and make a majority? Why may it not be considered as equivalent to a tie, counting the members who do not vote as voting the contrary way from the mayor? This would be fulfilling the purposes of the law in giving the mayor a casting vote in case of a tie. It would enable the making of a majority, and prevent the obstruction of business by refusing to act, and would be giving effect to the will of the majority, which is the governing rule in the action of corporations. * * * What [is] the propriety of giving to a refusal to vote more potency than to a vote cast? — of allowing a gain from violation of duty, in making the refusing to vote of more effect in governing the action of the body of which one is a member, than voting? ''

In *State ex rel. Rhinesmith* v. *Goodfellow* (111 N. J. L. 604), which involved the appointment of a clerk by the council, where the 6 members of the council were present and 3 voted for the appointment and 3 did not vote but expressed their dissent, and where the Mayor declared a tie and cast the deciding vote in favor of the appointment, it was held that the refusal or failure to vote justified recording the three nonvoters in the negative.

Also tending to support appellant's position is *Babyak* v. *Alten* (106 Ohio App. 191). The question there involved was the validity of an amendment to the Village Zoning Ordinance,

which in turn depended upon whether the amendment had been properly enacted. The statute required the concurrence of a majority of all members of the legislative authority for passage of an ordinance; and the Mayor had a vote only in case of a tie. The Village Council, the legislative authority, had 6 members. All were present at the council meeting and 3 members voted for the ordinance, 2 members voted against it, and 1 did not vote. The Mayor subsequently voted in favor of it, on the ground that the prior vote had resulted in a tie. In holding that the ordinance had been properly enacted, the court apparently was of the opinion that the Mayor properly cast his vote for the measure, thereby breaking the tie, if the vote had in fact resulted in a tie, but said also that the ordinance was validly adopted under the ''common-law rule * * * that the legal effect of refusing to vote is an acquiescence in the action taken by the majority of those who do vote.'' In coming to that conclusion, the court said (pp. 196–197):

'' If to obtain the passage of the ordinance herein some formal expression of a choice must be made by a number greater than half of the legislative authority, then the ordinance herein was not enacted according to the requirement of Section 731.17, Revised Code.

'' To adopt such a rule would result in some instances in inaction and one-man rule by a nonacting member of the council. * * * A councilman is elected for the purpose of expressing an opinion. Action, and not inaction, is a duty that he assumes with the office.''

*Somers* v. *City of Bridgeport* (60 Conn. 521), while not strictly in point, contains language which is instructive on the question presented and tends to support appellants' argument. Under the city charter, the Board of Police Commissioners, by whom policemen were to be appointed, consisted of 4 members and the Mayor. The Mayor had a vote only in the case of a tie, and any action required the concurrence of three members. At a meeting at which all members were present, 2 members voted for certain appointments and 2 refrained from voting, whereupon the Mayor declared the resolution passed, over the protest of the 2 nonvoting members. It was held that the silence of the nonvoting members when the vote was put was a concurrence in the passage of the resolution, and their subsequent protest was of no avail.

On the other hand, petitioner's position finds some support in *State ex rel. Deal* v. *Alexander* (107 Iowa 177). The statute there involved required the appointment of a Street Commissioner by the majority vote of all members of the City Council.

The Mayor had a vote only in case of a tie. On a motion to appoint defendant, 3 members voted yea, 2 did not vote, and the sixth voted for another person. The latter three members were recorded as voting no, the Mayor decided that there was a tie, voted yea and declared the motion carried. The court held (p. 182) that the "evidence shows that there was not in fact a tie" and that the Mayor, therefore, had no right to vote. There was no other discussion of the question.

In *State ex rel. Williams* v. *Edwards* (114 Ind. 581), it was held that where the County Auditor had a casting vote in case of a tie, and where 2 trustees voted for one candidate and the other 2 cast blank ballots, there was not such a tie as authorized the Auditor to vote. That case was distinguished by the same court in *Rushville Gas Co.* v. *City of Rushville* (121 Ind. 206) and was later overruled in *State ex rel. Morris* v. *McFarland* (149 Ind. 266).

*State ex rel. Drummond* v. *Dillon* (125 Ind. 65), cited by respondent, does not necessarily support his position. It was there held that where the 8 members of the Board of Trustees were present, and 4 voted for Dillon for Superintendent and 4 refused to vote, Dillon was validly elected, although there was not such a tie as entitled the Auditor to a vote. The court said (pp. 69–70): "[T]here was a quorum present, and Dillon received the votes of all those present and voting, which were a majority of the number necessary to constitute a quorum of all the trustees, and he received the necessary number of votes to elect him without the vote of the county auditor.

"The rule governing such elections is stated in Wilcock, Munic. Corp., section 546, to be: 'After an election has been properly proposed, whoever has a majority of those who vote, the assembly being sufficient, is elected, although a majority of the entire assembly altogether abstain from voting; because their presence suffices to constitute the elective body, and if they neglect to vote it is their own fault.' * * * In this case the elective body was in session, it consisted of eight members, and it was properly moved that Dillon be elected county superintendent, and four of the eight voted for his election, the other four declining to vote. If the other four had voted against his election, the law in that case provided that the county auditor should give the casting vote. It was the duty of all the members of the board to vote for or against the candidate whose name was proposed, and they could not defeat the object of the meeting and avoid the law, and prevent an election, by remaining silent and refusing to vote either for or against the candidate proposed."

The foregoing cases are sufficient to show the conflict in authority, in other jurisdictions, on the question before us. We have found no New York case precisely in point, although appellants argue to the contrary. *Matter of Brearton* (44 Misc. 247), cited by appellants as "precisely in point," does not involve the question here presented. It was there held that a member of the council present and not voting could be counted in determining whether a quorum was present, for the transaction of business. However, in that case, the court did quote from other authorities as follows (p. 258):

" ' Whenever electors are present, and don't vote at all, they virtually acquiesce in the election made by those who do.' Sudbury v. Stearns, 38 Mass. 148–154.

" ' The exercise of law-making power is not stopped by the mere silence and inaction of some of the law-makers who are present.' Attorney-General v. Shepard, 62 N. H. 383; approved, United States v. Ballin, 144 U. S. 9."

Other cases cited by petitioner and the Special Term, are of little aid on the question presented. None precisely parallels the factual situation presented on this appeal. Thus, in *People ex rel. Floyd* v. *Conklin* (7 Hun 188), the statute incorporating a savings institution required the vote of a majority of the trustees present, for the election of an officer. At a meeting, 12 trustees being present, 6 voted for relator, 4 for defendant, 1 for a third person and 1 cast no vote. It was held that there was no choice, since affirmative positive action by a majority of the trustees present was contemplated by the statute, and it could not be presumed that the trustee not voting " practically voted " for relator.

*People ex rel. Argus Co.* v. *Bresler* (70 App. Div. 294, affd. 171 N. Y. 302) held that, under the language of the charter provision there involved, the President of the City Council did not have the same right to vote on all questions coming before the Common Council as had the aldermen, but could vote only on resolutions and ordinances in case of a tie; and that a designation of an official newspaper was not one of the matters upon which he could so vote.

*Matter of Heafy* v. *McCabe* (247 App. Div. 277, affd. 270 N. Y. 616) was similar, it being there held that under the language of the applicable statute, the President of the Yonkers Common Council was not entitled to vote on a resolution for appointment of a City Clerk, even though there was a tie vote by the aldermen and even though the President of the Council, in certain cases, was entitled to vote in case of a tie.

In *Plantz* v. *Board of Supervisors* (122 Misc. 576), the statute required the vote of a majority of the Supervisors elected to make their action effectual. On a vote for appointments to various positions, all 34 members of the Board of Supervisors being present, the vote was 17 to 16, with one Supervisor not voting. It was held that there was no valid appointment, as there had not been the required vote of a majority of the Supervisors elected. It may be observed that the effect of the abstention from voting was not otherwise considered or discussed. It is also of interest to note that the court, in refusing to enjoin another vote on the appointments by the Board of Supervisors, which relief was requested on the ground that reconsideration was improper under the rules of the board, said (pp. 580–581): "Any other view would be adverse to public policy, and [adverse to] the practical doctrine that public officers are clothed with power for action and not inaction in the performance of their duties. The duty which was placed upon the board was to elect its officers and employees. Such a mandatory duty is clearly distinguishable from the right to pass a resolution or not pass it according to the wisdom and judgment of the members of the board. The failure to pass some proposal, the passage of which rests in the sound discretion and good sense of the members of the board, might well exhaust its power under its rules, if the proposal and the reconsideration of it met defeat. The failure to act in obedience to the command of the statute does not dispose of the duty to act, because the statute requires action and the duty is performed only by compliance with the statute."

In *Matter of Dudley* (33 App. Div. 465), the charter required a majority of all members of the Common Council, 12 in number, for appointment of the City Clerk. The Mayor had a casting vote in case of a tie. Six members voted for a certain individual, 4 against, and 2 members were *absent*, whereupon the Mayor voted in the affirmative. It was held that there was no valid election, on the authority of *People ex rel. Gaskill* v. *Ransom* (56 Barb. 514). In that case, the statutory provisions were similar to those in the *Dudley* case. There were 8 aldermen, of whom 4 and the Mayor voted for the appointment of a City Clerk, 3 voted against the appointment, and 1 was *absent*. It was held that there was no valid election, since the Mayor could vote only in case of a tie. In reaching that conclusion, it apparently was assumed that there was no tie, and that question was not even discussed, the ground of the decision being that the Mayor was not a member of the Common Council with the power to vote therein when there was no tie.

It seems clear that none of the foregoing New York cases, illustrative of the authorities relied upon by the parties, is controlling in the instant case which appears to be one of first impression in this jurisdiction.

While the question is not free from doubt, we have reached the conclusion that, in the absence of statute or rule providing to the contrary, the abstention here should be counted as a vote and that the challenged resolutions were properly regarded as adopted.

It is of course true that we must accept as facts, under the pleadings, that the Board of Supervisors had made no rules as to the question here presented, and that abstentions in the past had never been treated either as affirmative or negative votes. Those circumstances, however, show merely that the former procedure went unchallenged; they do not prevent a determination that abstentions must be counted under the circumstances here present.

Nor is it important on the question before us that, as noted by petitioner, in the United Nations abstentions are not counted as votes. What is done in that organization of sovereign nations, under the rules of that body, has little relevance to a vote in the Board of Supervisors on matters upon which the board has a duty to act.

We also do not agree with the holding at Special Term that abstention and absence must be treated alike. As was said in *Ray* v. *Armstrong* (140 Ky. 800, 820): "If it be held that his not voting had the same effect as if he had been absent, it would belie the facts. For he was not absent." Indeed, section 153 of the County Law provides that the Board of Supervisors shall have power to compel the attendance of its members and that a penalty of $50 may be imposed for nonattendance at its meetings, without sufficient excuse, indicating the legislative intent that Supervisors should be present and should fulfill the duties of the office to which they were elected, unless absent for good cause.

Our conclusion that the abstention should be counted as a vote, is based on the reasoning of cases such as *Launtz* v. *People* (113 Ill. 137, *supra*) and *State ex rel. Young* v. *Yates* (19 Mont. 239, *supra*). As was pointed out in those cases, there is no reason for giving a refusal to vote more potency than to a vote cast, and for allowing a gain from violation of duty by making the refusal to vote more effective than the act of voting. We are in accord with the statement in *State ex rel. Young* v. *Yates* (*supra,* pp. 242–243) quoted above, that "It is an exploded notion that a member of a legislative body such as a city council

can be present at a meeting, thus helping to make a quorum of the body, yet defeat the progress of legislation by refusing to vote when the roll is called. &ast; &ast; &ast; Such practice oftentimes might give to one member, and frequently to an attending minority, an opportunity to accomplish by silence what could not be done by speech, and often render presence, though inactive, more powerful than entire absence.''

To paraphrase what was said in *Babyak* v. *Alten* (106 Ohio App. 191, 197, *supra*), a Supervisor is elected for the purpose of expressing an opinion; and a duty of action, not inaction, is assumed with the office. (Cf. *Somers* v. *City of Bridgeport*, 60 Conn. 521, 526–527, *supra*; *Plantz* v. *Board of Supervisors*, 122 Misc. 576, 580, *supra*; *State ex rel. Drummond* v. *Dillon*, 125 Ind. 65, *supra*.)

The object and purpose of the provision of the Suffolk County Charter which gives the County Executive a casting vote is clearly to prevent a breakdown of the legislative process with respect to matters concerning which the Supervisors are unable to agree. The ruling by the Chairman that the County Executive was empowered to vote under the circumstances here disclosed, was not only authorized by the legislative command that the charter should be liberally construed to effect its objects and purposes, but was also consistent with the legislative intent that the Supervisors should act and not refrain from acting in the discharge of the important duties committed to them.

There is, of course, no duty imposed upon a Supervisor to vote, if he is disqualified or if other good cause exists sufficient to justify his abstention. It has not been suggested, however, that any such cause existed in the instant case.

The cases are in conflict as to whether an abstention should be treated as an affirmative or a negative vote. As indicated above, some hold that the failure to vote should be considered an affirmative vote (see, e.g., *Ray* v. *Armstrong*, 140 Ky. 800, 820, *supra*; *Somers* v. *City of Bridgeport*, 60 Conn. 521, 527, *supra*; *Napier* v. *Gay*, 264 Ky. 359, 362; *Rushville Gas Co.* v. *City of Rushville*, 121 Ind. 206, *supra*). Others hold that it should be regarded a negative vote (*Launtz* v. *People*, 113 Ill. 137, 144, *supra*), particularly where it was apparent that those abstaining were opposed to the proposition (*Kozusko* v. *Garretson*, 102 N. J. L. 508, 510; *State ex rel. Rhinesmith* v. *Goodfellow*, 111 N. J. L. 604, 607, *supra*). We need not decide that question at this time, as the result would be the same if the abstention had been regarded as an affirmative rather than as a negative vote. If the former, it would have made a majority of six for the resolutions. Counted as the latter, it has created a tie of 5 to 5, entitling the County Executive to vote, as he did.

For the reasons stated, we believe that the petition should have been dismissed as a matter of law.

We are also of the opinion that the relief demanded should have been denied in any event in the exercise of discretion. Even if it be assumed that the rulings made by the Chairman of the Board of Supervisors were erroneous as a matter of law, the burden was nevertheless on petitioner to demonstrate the necessity and propriety of the order which he sought. Although an order in the nature of mandamus is classed as a legal remedy, equitable principles largely control its issuance (*Matter of Coombs* v. *Edwards,* 280 N. Y. 361). Even in cases in which a clear legal right is shown the court must decide whether in the exercise of a sound discretion it will grant or withhold relief (*Matter of Durr* v. *Paragon Trading Corp.,* 270 N. Y. 464), particularly where the granting of relief will cause disorder and confusion in public affairs (*Matter of Andresen* v. *Rice,* 277 N. Y. 271; *Matter of Ahern* v. *Board of Supervisors,* 7 A D 2d 538, affd. 6 N Y 2d 376).

We see no reason for judicial intervention in this case. If petitioner opposed the appointment of the County Executive's nominee and the other proposals involved in this dispute, he had the right as a Supervisor to cast his vote against the resolutions and is not aggrieved by the rulings complained of, since his vote has been so recorded. If he tacitly approved the resolutions, or was indifferent and did not wish to be recorded as voting one way or the other, he has been deprived of no substantial right, since his conduct in refusing to vote amounted, practically, to acquiescence in the action taken. If he abstained from voting for the purpose of blocking effective legislative action, he should not have the assistance of the Supreme Court in the avoidance of his legislative duty.

With respect to the matters here involved, if legislative action may be effectively prevented by the act of a single board member in refusing to vote, it must follow that the same result may be obtained by similar abstentions on other occasions and that the board thereby may be rendered powerless to perform the important and essential public duties with which it is charged. In any such case the court in the proper exercise of its discretion may refuse to act, even though there be a clear legal right to relief (*Matter of Andresen* v. *Rice, supra*; *Matter of Ahern* v. *Board of Supervisors, supra*).

The order appealed from should be reversed on the law and the facts, without costs, and the application for relief should be denied.

BELDOCK and UGHETTA, JJ. (dissenting). An abstention is not a vote. Abstention is a common legislative practice. It may be a means by which time is gained to gather information and to determine the sentiment of constituents. We cannot inquire into motives of a legislator, nor can we make him vote.

Here, under the statute, there was no "tie vote." It is within the exclusive province of the lawmakers, if they should ever see fit to do so, to provide that, irrespective of abstentions, the County Executive shall cast a deciding vote either way where 5 Supervisors have voted for or where 5 Supervisors have voted against a resolution.

We also disagree with the majority in their dismissal of the petition as a matter of discretion. In our opinion, it is a manifest abuse of discretion to reverse a correct determination on the merits and to refuse to decide the single sharp issue of law here presented. In *Matter of Ahern* v. *Board of Supervisors* (6 N Y 2d 376, 382) the Board of Supervisors had acted. Public interest and an incomplete record were factors which warranted the exercise of discretion in dismissing the petition. Here, an individual Supervisor has determined that the resolutions have been adopted. It is certainly not in the public interest, by judicial inaction, to render public moneys available for misuse.

KLEINFELD and BRENNAN, JJ., concur with NOLAN, P. J.; BELDOCK and UGHETTA, JJ., dissent and vote to affirm, with memorandum.

Order reversed on the law and the facts, without costs, and application denied. Findings of fact insofar as they may be inconsistent herewith are reversed, and new findings are made in accordance with the opinion herein.