■ In the Matter of ROBERT KAPSON ENTERPRISES, LTD., Respondent, v PLANNING BOARD OF THE INCORPORATED VILLAGE OF AMITYVILLE, Appellant. —In a proceeding pursuant to CPLR article 78 to review a "purported"

determination of the Planning Board of the Incorporated Village of Amityville which denied petitioner's application for approval of a subdivision plat, and for a determination that the board had failed to act within the appropriate time limitation, the appeal is from a judgment of the Supreme Court, Suffolk County, entered January 23, 1978, which, upon determining that the tie vote of the planning board was "tantamount to inaction" and that "the application must be deemed approved," *inter alia,* (1) annulled the determination and (2) directed that a certificate of approval be issued. Judgment affirmed, without costs or disbursements, on the opinion of Mr. Justice Aspland at Special Term. Latham, J. P., Gulotta, Shapiro and Cohalan, JJ., concur; Suozzi, J., dissents and votes to reverse the judgment and remand the proceeding to Special Term for judicial review of the planning board's determination pursuant to CPLR article 78, with the following memorandum: The Planning Board of the Incorporated Village of Amityville consists of five members. On an application by the petitioner, a property owner, for approval of a proposed subdivision plat, the board, on July 20, 1977, voted two in favor of the application and two against. One member was absent. The board notified petitioner that his application was denied. By affirming the judgment of Special Term, the majority necessarily holds that the tie vote of the five-member planning board constituted inaction and triggered an automatic approval of the proposed subdivision plat pursuant to section 7-728 of the Village Law. I disagree. Such an incongruous result was never intended or envisioned by the Legislature in enacting section 7-728 of the Village Law and is totally repugnant to the principles of sound and orderly municipal planning. Rather, it is my view that the vote of the planning board constituted a denial of petitioner's application for approval of his subdivision plat and that petitioner's remedy in these circumstances was to seek review of the planning board's determination, i.e., whether it was supported by substantial evidence, by way of a CPLR article 78 proceeding. (Petitioner did seek such review before Special Term as an alternate form of relief. However, since Special Term granted the petition on the ground that the board's vote was a nullity and the application was deemed automatically approved, it did not address itself to the alternate relief asked for by petitioner.) Section 7-728 of the Village Law was originally enacted in 1926 as section 179-k of the former Village Law. Insofar as is pertinent to the case at bar, the relevant provisions of the section have not changed materially. Subdivision 1 of section 7-728 provides, in pertinent part: "The planning board may thereupon approve, modify and approve, or disapprove such plats or the proposed development thereof. The approval required by this section or the refusal to approve shall take place within sixty days from and after the time of the submission of the plat or the proposed development thereof for approval; otherwise such plot *[sic]* or such proposed development shall be deemed to have been approved, and the certificate of the clerk of such village as to the date of the submission of the plat or the proposed development thereof for approval and the failure to take action thereon within such time, shall be issued on demand and shall be sufficient in lieu of the written endorsement or other evidence of approval herein required." Concededly, section 7-728 of the Village Law is a default statute since it provides for automatic approval of a proposed subdivision "by virtue of official inaction" (see *Matter of Mahopac Isle v Agar,* 39 Misc 2d 1, 4; see, also, *Matter of Levin v Thornbury,* 2 AD2d 774). In determining the scope and meaning of inaction as it relates to this particular statute, it must be emphasized that the 60-day period set forth in the statute is a time period within which the planning board must act and,

in that respect, it merely serves as a triggering point for judicial review of the board's determination by an aggrieved party. The legislative history of section 179-k of the former Village Law, insofar as it is pertinent herein, provides (Bill Jacket for L 1926, ch 690 [Foreward to the Regional Plan for New York and its Environs]): "To protect property rights, to establish safe procedure and to secure the oversight of the courts in proper cases: (1) The approval or disapproval of a plat by a Planning Board, inasmuch as it is a discretionary administrative act, is subject to court review." Clearly, it was not the intent of the drafters of this legislation to maximize the situations where a subdivision application would be approved automatically by labeling a particular vote of the planning board as inaction. Indeed, "No court should construe a default statute in such a manner as to penalize the future and orderly growth of a community unless there is no other construction open" *(Matter of Ottaviano, Inc. v Zerello,* 33 Misc 2d 263, 266). Rather, the whole thrust of the statute was to allow for judicial review of a planning board's determination and to limit the provision calling for automatic approval of the subdivision to those cases where the planning board denies an individual his rights by simply refusing to act at all upon his application for subdivision approval. In the case at bar, the planning board has, in my view, taken action on petitioner's application for subdivision approval and by its vote, has clearly indicated that it did not approve the application. For the purpose of this planning board, a quorum consisted of three members. Section 41 of the General Construction Law provides, in pertinent part: "Whenever three or more public officers are given any power or authority, or three or more persons are charged with any public duty to be performed or exercised by them jointly or as a board or similar body, a majority of the whole number of such persons or officers, at a meeting duly held at a time fixed by law, or by any by-law duly adopted by such board or body, or at any duly adjourned meeting of such meeting, or at any meeting duly held upon reasonable notice to all of them, shall constitute a quorum". Accordingly, that threshold requirement was satisfied. However, petitioner argues that a majority of the planning board, i.e., at least three members, had to either vote for or against the proposed subdivision, and that the failure of either side to obtain three votes rendered the board's tie vote a nullity, thereby leading to automatic approval of the subdivision application pursuant to section 7-728 of the Village Law. In support of this position, petitioner relies on that part of section 41 of the General Construction Law which states that "not less than a majority of the whole number may perform and exercise such power, authority or duty." Quite apart from the fact that such a position is totally in conflict with established rules of order (where a tie vote signifies that a resolution has been defeated), it is my view that an application of this part of section 41 of the General Construction Law to section 7-728 of the Village Law would lead to a construction of the latter statute which would "penalize the future and orderly growth of a community" and which the courts frown upon (see *Matter of Ottaviano, Inc. v Zerello, supra,* p 266). It must be emphasized that petitioner had the burden of demonstrating the soundness and feasibility of the proposed subdivision. In this regard, it is extremely significant to note that section 7-728 of the Village Law must be read in conjunction with section 7-730 thereof (section 179-1 of the former Village Law), which requires that certain conditions relating to the health and safety of the community exist before a planning board can approve a proposed subdivision plat. The effect of petitioner's argument, and the acceptance thereof by the majority, effectively removes this burden from petitioner and places it in a position where its subdivision plat can be

disapproved only if three members of the planning board vote against it, notwithstanding the fact that the proposed subdivision may be woefully deficient. The General Construction Law is applicable to every statute "unless its general object * * * indicate[s] that a different meaning or application was intended from that required to be given by this chapter" (General Construction Law, § 110). The object of section 7-728 of the Village Law clearly militates against the application to it of section 41 of the General Construction Law. Indeed, the application of section 41 of the General Construction Law is particularly offensive in the case at bar where the record indicates that the planning board acted on the application by conducting several hearings and actively pointing out various deficiencies in the subdivision plat submitted by petitioner. Under these circumstances, it is my view that the tie vote of the planning board on a motion to approve petitioner's subdivision plat constituted a denial thereof, and not inaction, and that petitioner's remedy was a CPLR article 78 proceeding to review the planning board's denial of his application. I recognize that *Matter of Squicciarini v Planning Bd. of Town of Chester* (48 AD2d 687, affd 38 NY2d 958), at first blush, supports petitioner's argument and the majority's holding. However, I am of the view that *Squicciarini* can and must be distinguished by limiting it to its particular facts. In *Squicciarini,* the Planning Board of the Town of Chester met to consider petitioner's application for a special permit. Although the total membership of the board was seven members, only four were present for the vote and, on a motion to deny approval of the special permit, the vote was "Three in Favor, One abstained." This court held that the vote was ineffectual to deny the application and was equivalent to nonaction, since the denial was by less than a majority (i.e., four) of the seven members of the planning board. This court further held that the special permit was deemed to have been approved by virtue of section 5.1.2.4 of the Town of Chester Zoning Law, which is similar in structure to section 7-728 of the Village Law and which provides that "Failure of the Planning Board to take action on a special permitted use within 45 days of the public hearing shall be construed as authorization of such use by the Planning Board." Such a drastic result is even more incongruous than the one reached at bar. In *Squicciarini,* the special permit was deemed automatically approved even though three members voted against it and one abstained and, in the absence of any distinguishing features, the case would obviously be binding on this court. However, I am of the view that *Squicciarini* should not be considered as binding precedent in the case at bar for the following reasons: (1) Of the four votes cast in *Squicciarini,* one was an absention. It has not been conclusively determined by the courts of this State whether an absention is treated as a valid vote (see *Rockland Woods v Incorporated Vil. of Suffern,* 40 AD2d 385; cf. *Matter of Cromarty v Leonard,* 13 AD2d 275, affd 10 NY2d 915), and the court in *Squicciarini* did not address that issue. Acting on the proposition that it is not a valid vote (see *Rockland Woods v Incorporated Vil. of Suffern, supra,* p 387), it can be argued that in *Squicciarini,* the total number of valid votes cast in favor and in opposition did not even equal a legal quorum; and (2) No legislative history surrounding the enactment of the Zoning Law of the Town of Chester was offered in *Squicciarini* to guide the court (as opposed to the legislative history of section 7-728 of the Village Law, heretofore discussed) and the subject provision of the Town of Chester Zoning Law covered a wholly different area, i.e., special use permits, than that involved in the proceeding at bar, i.e., subdivision applications. For all of the above reasons, I respectfully dissent and vote to reverse the judgment

appealed from and to remand the proceeding to the Special Term for appropriate judicial review of the board's determination.