OPINION OF THE COURT
Herman Cahn, J.
The Bank of New York Company, Inc. (BNY) seeks a determination that a proposed bylaw amendment considered and voted on at the general meeting of Irving Bank Corporation (IBC) was duly adopted. BNY moves for a preliminary mandatory injunction directing IBC to effectuate said amendment.
THE FACTS
BNC and IBC have been engaged in a battle for control of IBC. As part of the battle, BNY and IBC nominated separate *509 slates for election to the IBC board of directors at the 1988 annual meeting. Each of the parties circulated proxies, to the shareholders of IBC, in an effort to procure the election of their nominees to the board.
BNY also proposed an amendment to the IBC bylaws. This amendment was strongly opposed by the IBC board. The amendment would allow a 10% shareholder to call a special meeting of shareholders.
The proxies which were circulated by each side appointed certain named persons proxies of the shareholder who signed it, and contained spaces for instructions as to how the proxies were directed to vote. First, as to the election for the board, the proxy listed the directors nominated by the side circulating that particular proxy, and then set forth two boxes, which were to be checked in giving instructions to the proxy how to vote: (a) For all nominees, etc., and (b) Withhold authority to vote for all nominees. Further, in the proxy, instructions for voting are sought as to the BNY proposal to amend the bylaws. The description of the proposal is followed by three boxes: for, against, abstain. The proxy circulated by IBC recommended a vote against the BNY proposal, and advised that if no instructions on this point were given, the proxy would be voted against the proposal. The proxy circulated by BNY advised the opposite; that is that it recommended a vote for the proposal, and that in the absence of instructions to the contrary, the proxy would be voted for the proposal.
The meeting was held and adjourned to May 6, 1988, when the votes were cast, and thereafter tabulated. A proceeding to review the results of the vote as found by the inspectors of election was commenced in this court. A Referee was appointed who held factual hearings, and who rendered his report. A motion to confirm the report in whole or in part is pending before the court.
The inspectors of election reported that 7,698,692 shares had been cast for the BNY proposal; 7,243,554 shares had been cast in opposition to it, and 476,985 shares abstained. BNY claims that the resolution was approved, since more votes were cast for the resolution than were cast against it. IBC claims that in order to take any action at a shareholders’ meeting, the action must be authorized by a majority of the shares voting at the meeting. Since less than half of the total shares who were represented at the meeting voted for the resolution, it was defeated. In order to arrive at this conclu *510 sion, IBC argues that shares which abstained on this proposal must be counted as having voted, and must be counted in order to determine the number of shares which are required to make up a majority.
THE LAW
Business Corporation Law § 614 (b) states that any corporate action to be taken at a shareholders’ meeting (other than election of directors) must "be authorized by a majority of the votes cast”. BNY argues that the "votes cast” means the votes actually cast for or against a resolution, and that an abstention means that the vote was not cast in connection with that resolution. IBC argues that the abstention is also a "vote cast” and that it must be counted as such.
The court notes that we are concerned with proxies, which by their terms appoint certain persons to act for the stockholder at the meeting. The authority given to the persons so appointed is strictly limited by the terms of the proxies themselves. Further, since IBC is a publicly traded corporation, the proxies were prepared and circulated pursuant to the rules and requirements of the Securities and Exchange Commission (S.E.C.). The authority given to the proxies are to vote the shares "as instructed below” (proxy form). That means that they are limited, i.e., the holder of the proxy can only take the actions that he/she are instructed to take in the body of the proxy. In those proxies where the instruction was "abstain”, the holders of the proxies were not authorized to vote or to take any other action; they were simply directed to abstain from taking any action. By checking the box marked "abstain”, the shareholder is directing his proxy not to take any action; he is certainly not directing or permitting the proxy to vote in any way on that item of business. The last paragraph of the IBC proxy states that the proxy will be voted against the proposal, unless otherwise specified. If the direction to abstain would effectively lead to a negative vote (as it would under IBC’s argument), such statement would be meaningless.
The S.E.C. requires that proxy cards provide a means by which shareholders may withhold authority to vote certain issues. 17 CFR 240.14a-4 (b) (1) provides: "Means shall be provided in the form of proxy whereby the person solicited is afforded an opportunity to specify by boxes a choice between approval or disapproval of, or abstention with respect to, each *511 matter or group of related matters referred to therein as intended to be acted upon, other than elections to office. A proxy may confer discretionary authority with respect to matters , as to which a choice is not specified by the security holder provided that the form of proxy states in bold-face type how it is intended to vote the shares represented by the proxy in each such case.”
In the comments to the rules, the Commission states: "The commission is concerned, however, that there be adequate opportunities for security holders to use the proxy form to clearly convey their voting instructions to the issuer. Therefore, rule 14a-4 (b) (1) has been revised to require that the form of proxy provide a means for the person solicited to specify, by boxes, a choice to abstain with respect to each matter to be acted upon, as well as to approve or disapprove each matter, other than elections to office. To help minimize the number of abstentions when significant proposals recommended by the board of directors are voted upon and to clarify the meaning of signed but unmarked proxies, the Commission requests issuers to make greater efforts to encourage security holders to vote on the matters to be considered at the meeting.” (Emphasis added.) Accordingly, it becomes apparent that the abstain box is specifically provided in the proxy to enable the shareholders to not vote on an issue or issues.
This issue has also been addressed by the courts of this State in varying contexts; there appears to be a divergence of opinions and resolutions of the issue, and none of the cases address the issue directly in the context of a shareholders’ or other corporate meetings, or with relation to Business Corporation Law § 614.
In Matter of Cromarty v Leonard (13 AD2d 275, affd 10 NY2d 915 [1961]), the vote of a majority of the total membership of the Suffolk County Board of Supervisors was necessary to approve the nominee for County Attorney. Only in the event of a tie could the County Executive vote. The Board consisted of 10 members; 5 voted in favor, 4 voted opposed, and 1 abstained. A vote of 6 of the 10 was needed to constitute a majority, or a 5-to-5 vote to constitute a tie, to enable the County Executive to vote. The court held that the abstention qualified as a negative vote (and therefore the votes were 5 to 5), enabling the County Executive to vote and break the tie. This prevented "a breakdown of the legislative process with respect to matters concerning which the Supervisors are unable to agree.” (13 AD2d, at 286.)
*512 In Rockland Woods v Incorporated Vil. of Suffern (40 AD2d 385), the same court which decided Cromarty (supra) did not follow it, but distinguished it as an emergency situation, "in that the organization of a county government would have been paralyzed if the abstention were not treated as a vote.” (40 AD2d, at 387.) In Rockland, a vote of 3 of a 5-member board was needed to approve a change in the village’s zoning ordinance. One seat was vacant, 1 abstained, 1 voted against, and 2 voted in favor of the resolution. The court held that the abstention could not be counted as a vote; neither an affirmative nor negative vote. (See also, Lamb v Cohen, 40 Misc 2d 615, 618 [vote of a Republican City Committee, of 12 for, 4 against and 15 abstentions. Held: The amendment was adopted. "The failures to vote regardless of the fact that they emanated from committeemen present or absent cannot affect results”]; Matter of Downing v Gaynor, 47 Misc 2d 535 [vote of 3 of 5 members of County Planning Commission, 1 abstaining, 1 seat vacant, held not to constitute required two-thirds vote of board (i.e., 4 votes), citing Matter of Cromarty v Leonard, supra, for the proposition that the abstention should be counted in opposition to a resolution]; Matter of Monroe v New York State Bd. of Elections, 35 NY2d 738 [majority of delegates "present and voting” needed to designate party candidate. Vote of 10 for Murray, 9 for Staley, 1 abstention. Held: When rules required a majority vote of those present, abstention is not a vote of those "present and voting”].)
The court has considered IBC’s argument based on section 613 (c) of the Not-For-Profit Corporation Law, but does not find it persuasive. Specifically, section 613 of the Not-For-Profit Corporation Law substantially tracks the provision and language of Business Corporation Law § 614. However, the last sentence states: "Blank votes or abstentions shall not be counted in the number of votes cast” (Not-For-Profit Corporation Law § 613 [c]). The argument is made, that by so stating in one statute, the Legislature showed that the absence of the language in the Business Corporation Law indicates a different rule, i.e., that abstentions shall be counted. However, such an interpretation would fly in the face of the provisions of the proxy itself, as well as the S.E.C. requirements discussed above.
In sum, the court grants the motion and finds that the proposal was passed by the shareholders at the IBC annual meeting.